Ivery WILLIAMS, Appellant,

v.

The STATE of Texas, Appellee.

No. 64651.

Court of Criminal Appeals of Texas, En Banc.

Jan. 4, 1984.

Rehearing Denied March 28, 1984.

On Rehearing July 11, 1984.

Rehearing Denied Oct. 3, 1984.

Bruce Sadler, Amarillo, for appellant.

Thomas A. Curtis, Dist. Atty. and Steve Schiwetz, Asst. Dist. Atty., Amarillo, Robert Huttash, State's Atty., Austin, for the State.

## OPINION

CLINTON, Judge.

This is an appeal from a conviction for aggravated robbery in which the punishment was assessed at 99 years confinement.

The evidence established appellant and two companions, one male and one female, forced their way into the home of Clara Sherman shortly after her husband had left for work on the morning of March 22, 1979. Mrs. Sherman was alone in the house with her 89 year old semi-invalid mother. The intruders tied Mrs. Sherman up then ransacked the entire house.

After an hour, the intruders departed. Sherman freed herself and went immediately to check on her mother; she found the 89 year old woman "wadded up" at the foot of her bed, shaking and crying.

Vast amounts of jewelry, a color television, radios, clocks, clothing, liquor, luggage, binoculars, and a camera were taken in the robbery.

By his first ground of error, appellant contends the trial court erred in admitting the complainant's incourt identification of him because there was no clear and convincing evidence that such identification was not tainted by the suggestive identification process.

Immediately apparent in this contention is the assumption that a suggestive procedure was employed when the complainant identified appellant out of court. This assumption is not supported by the record and this ground of error will accordingly be overruled.

■ From the totality of the evidence, an integrated picture of events emerges notwithstanding conflicts in the testimony.[1]

---

1. Mrs. Sherman was shown numerous photographic arrays on numerous occasions. It should be borne in mind that the police were looking for three assailants in this case alone. Further, the record reflects they were attempting to determine whether any or all of these three had been involved in several other recent robberies in the vicinity. Thus, the police were simultaneously conducting photographic line-

ups with many witnesses other than Mrs. Sherman at the time they were investigating this case.

For these reasons the trial court apparently assigned little significance to testimonial conflicts regarding the number or sequence of photo spreads shown to Mrs. Sherman. Our review of the record convinces us such assignation was

There is no conclusive evidence that Sherman ever saw a photographic lineup containing a picture of appellant before she identified him in a corporal lineup on April 2, 1979.[2] There is some evidence that she selected his photo from a spread shown her *after* the corporal lineup: defense counsel displayed a photo array to Sherman at the hearing which he called "defendant's exhibit number 3" and which contained a photo of appellant, but inexplicably, he did not have it admitted for the record. Mrs. Sherman indicated she thought she had been shown this exhibit and had selected appellant from it after the physical lineup procedure.

Thus, whatever suggestiveness may have preceded Sherman's incourt identification of appellant before us for review could not have occurred in any other than the corporal lineup. We therefore turn to that procedure.

The only complaint leveled at the corporal lineup is that of the six participants, only two could have been 35 years old, yet the complainant had described the robber as being between 30 and 35 years of age. The record reflects appellant was in fact 32 at the time of the lineup. The investigating officer, Deputy Hammonds, testified most of the lineup participants appeared to be from mid to late twenties.

A photograph taken of the participants was included in the record: they are approximately the same height and weight; of the same race; and all have facial hair similar to that apparently described by Mrs. Sherman[3] and, in fact, worn by appellant.

We are unpersuaded by appellant's argument to the effect that lineup participants appearing to be younger than appellant alone rendered the corporal lineup procedure impermissibly suggestive. See *Turner v. State,* 600 S.W.2d 927 (Tex.Cr. App.1980). Since no impermissibly suggestive pretrial procedure was employed, we need not address appellant's contention the pretrial procedure resulted in a substantial likelihood that Mrs. Sherman's in-court identification of him was in error. Compare *Jackson v. State,* 657 S.W.2d 123 (Tex.Cr.App.1983). Moreover, our review of Mrs. Sherman's testimony regarding her observations of appellant at the time of the offense, together with evidence she never failed to identify appellant and never identified anyone else as appellant, and her certainty in general, convince us her identification of appellant at trial was a product of her observations on the day she was robbed. *Turner,* supra.

This first ground of error is overruled.

In his second ground of error, appellant complains he was denied a fair and impartial determination of punishment when the jury discussed the effect of parole on the time he would be required to serve under a sentence. Article 40.03(8), V.A.C.C.P.[4]

▇ The Court has recently reaffirmed the notion that *any* discussion of parole by the jury is misconduct. *Munroe v. State,* 637 S.W.2d 475 (Tex.Cr.App.1982); see also *Diaz v. State,* 660 S.W.2d 93 (Tex.Cr.App. 1983). However, such misconduct must operate to deny the defendant a fair trial before a new trial is necessitated. *Id.* The denial of a fair trial is demonstrated by a showing that "even a single juror voted for

---

justified, and, ultimately, of no moment in resolution of the reliability of Sherman's incourt identification of appellant.

2. She *was* shown two photo spreads prior to the lineup: in one she could identify no one (and it contained neither appellant nor his codefendants); in the other, she selected appellant's codefendant, George Hicks.

3. While Deputy Hammonds' initial offense report did not include facial hair as a part of Mrs. Sherman's description, and Mrs. Sherman could not specifically remember whether she gave that

feature in her description on the day of the offense, it is obvious she mentioned it sometime before the corporal lineup.

4. Article 40.03 provides in relevant part:

"New trials, in cases of felony, shall be granted the defendant for the following causes, and for no other:

\*　　\*　　\*　　\*　　\*　　\*

(8) where, from the misconduct of the jury, the court is of the opinion that the defendant has not received a fair and impartial trial."

an increased punishment because of the discussion...." *Munroe*, supra, at 478.

At the hearing on appellant's motion for new trial appellant called Linda Joliff; the State called the jury foreman, Dr. Johnny Wise, and Billie Jean Shumate.

The uncontroverted testimony between these three jurors [5] was that the jury immediately took a vote on punishment. When quite divergent views were revealed by the vote, "everyone" began to talk about the effect of parole on the length of time one would actually serve on a given sentence. This was apparently prompted by the fact that the State had just established the 32 year old appellant had been given six life sentences in 1965,[6] approximately 14 years before commission of the instant offense. After this discussion, it still appeared there was little consensus; the jurors decided a reading of the trial court's instructions might prove helpful. When Dr. Wise read the admonition against discussing parole, he stated something to the effect of: "Well, we have already blown that." Thereafter, though the subject was brought up again, Dr. Wise and other jurors would remind the group it was improper to discuss it.

Four or five jurors had taken the position from the outset that the State's request for 99 years was appropriate and they had no intention of agreeing to less. After a while, the jurors sent a note to the trial judge asking what was "the next step" since they could not "reach a unanimous verdict."[7] The trial court instructed: "Continue your deliberations." At this point, several jurors refused to participate further, stating their votes were cast. They left the conference table.

Mrs. Joliff testified she believed a punishment less than 99 years would be appropriate. Yet, by 10:30 p.m. (thirty minutes after the trial court's instruction to continue deliberations) a unanimous verdict for 99 years was returned.

The record as a whole demonstrates that Joliff relented and agreed to a 99 year sentence because of the late hour, hunger, fatigue, the unwillingness of several jurors to reconsider or further discuss the matter of punishment and her belief that the jury would not be released until they had reached a unanimous verdict.[8] Joliff was not willing to unequivocally state that the parole discussions affected her ultimate verdict,[9] much less that she ultimately agreed to a 99 year sentence "*because of* the discussion."[10] See *Munroe*, supra, at 478.

■ Accordingly, from the evidence adduced the trial court could reasonably have inferred it was not the improper discussion which caused Joliff to agree to 99 years. Moreover, the trial judge was in a position to observe Joliff's demeanor and interpret her testimony; thus, we are satisfied his personal observations of the witness coupled with her equivocal testimony justified his conclusion that the improper discussion was not responsible for the verdict.[11]

---

5. Dr. Wise was unable to recall most salient details of the deliberations.

6. At the punishment stage the State proved appellant had received the life sentences for five robberies and one rape on March 16, 1965, a 25 year sentence for assault with intent to commit rape on the same day, and a three year sentence for theft over $50.00 on April 28, 1965.

7. The record reveals the jurors had declined the court's offer for an evening meal, and, after a break, began their punishment deliberations at 8:26 p.m. The note to the court was sent at approximately 10:00 p.m.

8. One juror had stated she would not "budge" from 99 years if she "had to stay a week." Mrs.

Shumate testified at the hearing that this was her position also.

9. The strongest statement Joliff would make even with prompting from defense counsel, was that she did not "believe" she would have changed her mind if parole law had not been discussed.

10. All emphasis is supplied throughout by the writer of this opinion unless otherwise indicated.

11. Though the trial judge did not reduce his decision to writing, see Article 40.07, V.A.C.C.P., he did actively participate in this hearing and made every effort to isolate and clarify the cause of Joliff's actions. It is clear from his

Therefore, appellant's punishment did not result from denial of a fair and impartial trial as explicated in *Munroe*, supra.

Appellant's second ground of error is overruled.

By his third ground of error appellant complains of the trial court's order purporting to cumulate his sentence.

The record reflects the trial court entered a sentence in this cause on July 16, 1979 which ordered appellant's immediate delivery to the Texas Department of Corrections, and his confinement there for not less than five nor more than 99 years. It then recited:

"Said sentence is to be stacked on the sentences currently being served by defendant, which are: Cause Number 70073, Tarrant County, three (3) years; Cause Number E8430JI, Dallas County, life; Cause Number E8428JI, Dallas County, life; Cause Number E8618JI, Dallas County, life; and, Cause Number E8545JI, Dallas County, 25 years."

Appellant filed his appellate brief in the trial court on November 30, 1979, and therein complained of the above recitation. In response, the trial court convened a hearing on January 11, 1980, one purpose of which was to pronounce "an amended sentence." Appellant's counsel objected to the resentencing procedure; he argued the effect of the original void cumulation order was that the sentence in the instant cause must run concurrently with other sentences extant, and the trial court's attempt to belatedly correct the cumulation order had the effect of increasing appellant's punishment after he had already begun service of the sentence. This objection was overruled. The trial court entered an "Amended Sentence" on the same day.

Thereafter, on February 27, 1980, appellant filed a supplemental brief in the trial court; he contended the trial court's belated sentencing hearing was without jurisdiction, and, if the trial court had jurisdiction to enter the amended sentence, the cumulation order reflected there was *still* void.

Appeal was duly perfected to this Court. However, upon our initial review of the record we determined it contained no amended sentence entered January 11, 1980, or thereafter, though it did contain a transcription of the hearing held that day. We accordingly abated this cause and ordered the trial court to supervise the determination of whether any amended sentence had been entered and, if so, cause the district clerk to forward it to this Court in a supplemental transcript. This the trial court has done, and the amended sentence is now before us.

The amended sentence purports to order cumulation of appellant's sentence in this cause as follows:

"Said sentence *is to be stacked on* the sentences currently being served by defendant, which are: Cause Number 70073, Criminal District Court # 1 in Tarrant County, Texas, three (3) years; Cause Number E8430JI, life; Cause Number E8428JI, life; Cause Number E8618JI, life and E8545JI, 25 years, all in the Criminal District Court Number 2 of Dallas County, Texas."

■ Initially we note the primary function of *any* sentence: "... the order of the court ... pronouncing the judgment, and *ordering the same to be carried into execution* in the manner prescribed by law." Article 42.02, V.A.C.C.P. In other words, the sentence is the official document which not only authorizes penitentiary authorities to confine a convict, but also conveys to them in the form of a mandatory order clearly and unequivocally the appropriate manner and length of that confinement. See generally *Todd v. State*, 598 S.W.2d 286, 292, n. 6 (Tex.Cr.App.1980) and accompanying text.

■ When a trial judge wishes to exercise his discretion to cumulate a sentence with another as authorized by Article 42.08,

questions and comments that he did not believe the parole discussion caused her ultimate agree-

ment to a 99 year punishment.

V.A.C.C.P., he must, pursuant to that statute and Article 42.02, supra, pronounce the judgment and sentence in a manner which is clear and unequivocal in terms of exactly when the sentence is to begin. Article 42.08, supra, provides in relevant part:

"... the judgment in the ... subsequent conviction[ ] may ... be that the punishment *shall begin when the judgment and sentence in the preceding conviction has ceased to operate,* ... and sentence and execution shall be accordingly."

It is therefore mandatory that the trial court, in complying with Article 42.01, V.A.C.C.P.[12] recite in the judgment his determination that the instant punishment shall begin when the judgment and sentence have ceased to operate in another described cause, and preferably in this language which is taken from Article 42.08, supra. In turn, this language should be repeated in the sentence which, it must be remembered, orders the judgment into execution. Article 42.02, supra.

In the instant case, the judgment and sentence order the 99 years assessed "to be stacked on" described sentences currently being served by appellant. This is not adequate to direct clearly and unequivocally officials of the Texas Department of Corrections that appellant is to be confined pursuant to the instant sentence when and only when others have ceased to operate; therefore, the sentence is insufficient to convey when and how long appellant is to be detained. *Ex parte Jordan,* 562 S.W.2d 483 (Tex.Cr.App.1978); see also *Ex parte Collier,* 156 Tex.Cr.R. 377, 243 S.W.2d 177 (1951).

Because the cumulation order is void, it must be set aside; the sentence in this cause must begin on the day it was originally pronounced. *Ex parte Ashe,* 641 S.W.2d 243 (Tex.Cr.App.1982); *Ex parte Jordan,* supra.

By a second supplemental brief, counsel for appellant advances two grounds of fundamental error.

■ First he complains the court's charge to the jury failed to require a finding that the robbery occurred during appellant's commission or attempted commission of theft "without the owner's consent;" he cites *Evans v. State,* 606 S.W.2d 880 (Tex. Cr.App.1980).

It is true that the jury charge in the instant case is identical to that condemned in *Evans,* supra; however, *Evans* was overruled in *Woods v. State,* 653 S.W.2d 1 (Tex.Cr.App.1982) (Opinion on State's Motion for Rehearing).

This supplemental ground of error is without merit.

■ By his second supplemental ground of error, counsel for appellant contends appellant received ineffective assistance of counsel at trial. This supplemental ground has been pursued at appellant's personal insistence and in support thereof, appellant has filed two "exhibits," the first of which lists nine failures of trial counsel. The second "exhibit" is entitled "affidavit" and purports to be a sworn statement of one Mattie Faye Bradley.

The alleged misdeeds of trial counsel are as follows: (1) failure to file a motion to quash the complaint "which was void on its face;" (2) failure to challenge "the issue of probable cause when it was apparent that probable cause did not exist;" (3) failure to investigate "the alibi of appellant;" (4) failure "to call Mattie Faye Bradley after she was sworn in to testify in appellant's behalf;" (5) failure to object to fundamentally defective charge; (6) failure to "object to, or investigate void prior convictions;" (7) failure to object to "appellant's defense theory not being alleged in the jury charge, when alibi defense was appellant's only defense;" (8) urging appellant "to waive his rights to strikes in the jury

---

12. Article 42.01, supra, provides in part:
"Sec. 1. A 'judgment' is the declaration of the court entered of record, *showing:*

 * * * * * *

10. *that the defendant be punished as has been determined.*
 * * * "

selection, and this advice was erroneous;" (9) urging appellant "to waive arraignment, when he had access to complaint."

Quickly obvious is the fact that evidence relevant to most of these contentions is not in the record before us. Those remaining are without merit: even if the original complaint filed against appellant were "void on its face," we fail to see what difference it makes; the record reflects counsel presented appellant's socalled alibi defense and we infer from that that counsel investigated it to the extent necessary to subpoena two witnesses; after the State fully rebutted appellant's alibi, it was a reasonable tactical decision not to further emphasize its falsity by having the instructions to the jury refer to it; fundamental error in the charge does not require an objection for preservation and, as noted above, the charge as given was not erroneous at all.

This ground of error is overruled.

However, this does not conclude consideration of appellant's prolific appeal, for while this cause was pending on appeal, he filed a pro se "writ of habeas corpus" containing seven allegations which was ordered filed as a "brief on appeal" by the Court. Some of these contentions have been resolved by our treatment of other grounds of error; the remaining contentions are utterly spurious.[13] Accordingly they are all overruled.

In the interest of justice we have carefully reviewed three untimely pro se briefs and have found them to be without merit. The only new contention raised which requires specific address is, as we understand it, the evidence is insufficient to prove the property alleged was owned by Clara Sherman.

■ We find the evidence adduced clearly supports the jury's verdict which necessarily included a finding that the property in issue was owned by the complainant. This ground of error is overruled.

The judgment of conviction is affirmed. The cumulation order contained in the sentence in this cause is set aside; the 99 year sentence assessed herein is to begin on the day originally pronounced.

It is so ordered.

ONION, P.J., dissents to setting aside cumulative order.

McCORMICK, J., concurs in result.

MILLER, J., not participating.

## OPINION ON STATE'S MOTION FOR REHEARING

THOMAS G. DAVIS, Judge.

After finding appellant guilty of the offense of aggravated robbery, the jury assessed punishment at 99 years.

■ On original submission we affirmed appellant's conviction, but set aside the trial court's order which cumulated the instant sentence with other sentences being served by appellant. We held that the trial court's sentence which ordered the sentence of 99 years "be stacked on" appellant's other sentences was "not adequate to direct clearly and unequivocally officials of the Texas Department of Corrections that appellant is to be confined pursuant to the instant sentence when and only when others have ceased to operate ..." We stated it is mandatory under Art. 42.01, V.A.C. C.P.[1] that the trial judge "recite in the judgment his determination that the instant

---

13. Appellant alleges the indictment is void because: no complaint was filed; it was "rubber stamped and attested to by a deputy district clerk;" it joins two separate offenses by alleging both "threaten" and "place in fear of serious bodily injury or death;" its wording suggests "petitioner actually did the offense." He also complains the State used V.T.C.A. Penal Code, §§ 22.01, 22.02, 31.03, 29.02 and 29.03, to make an "ex post facto law [which] increases ... a misdemeanor to a felony." Finally he contends "in the course of committing theft" shows an

"attempt;" he should therefore be liable only for a second degree felony conviction and penalty.

1. Former Art. 42.01, Sec. 10, applicable to the instant cause provides in pertinent part:

"Sec. 1. A 'judgment' is the declaration of the court entered of record, showing:

" . . .

"10. That the defendant be punished as has been determined."

punishment shall begin when the judgment and sentence have ceased to operate in another described cause, and preferably in this language which is taken from Art. 42.08," V.A.C.C.P.,[2] and that "this language should be repeated in the sentence which ... orders the judgment into execution."

In its motion for rehearing, the State asserts that the words "stacked on" in the sentence adequately reflect the trial court's decision that the instant sentence be consecutive to or cumulated with appellant's prior sentences. The State also maintains this Court was incorrect in stating that the trial court's cumulation order must be recited in the judgment *and* sentence.

The trial court initially sentenced appellant on July 16, 1979, and such sentence purported to cumulate appellant's sentence as follows:

> "Said sentence [of 99 years] *is to be stacked on* the sentences currently being served by defendant, which are: Cause 70073, Tarrant County, three (3) years; Cause Number E8430JI, Dallas County, life; Cause number E8428JI Dallas County, life; Cause Number E8618JI, Dallas County, life; and Cause Number E8545JI, Dallas County, 25 years." (Emphasis added.)

Appellant filed his appellate brief in the trial court pursuant to former Art. 40.09(9), V.A.C.C.P., on November 30, 1979. Appellant's third ground of error in the brief alleged that the cumulation order quoted above is insufficient because it "fails to specify the courts in which the previous convictions were obtained." In response to this challenge, the trial court held a hearing on January 11, 1980[3] and pronounced an "amended sentence," which provides in pertinent part as follows:

**2.** Art. 42.08 provides in pertinent part as follows:

"When the same defendant has been convicted in two or more cases, ... in the discretion of the court, the judgment in the second and subsequent convictions may either be that *the punishment shall begin when the judgment and sentence in the preceding conviction has*

> "Said sentence [of 99 years] is to be stacked on the sentences currently being served by defendant, which are: Cause No. 70073, Criminal District Court # 1 in Tarrant County, Texas, three (3) years; Cause Numbers E8430JI, life, Cause number E8428JI, life; Cause Number E8618JI, life and E8545JI, 25 years, all in Criminal District Court number 2 of Dallas County, Texas."

Appellant objected to the resentencing, and submitted a supplemental brief to this Court challenging the validity of the amended sentence. We did not reach appellant's contentions on original submission because we found the cumulation order to be void due to the use of the words "stacked on."

Addressing the State's contentions first, we find that we incorrectly set aside the cumulation order on original submission.

While the term "stacked" is not used in the statute, it has a well-known usage as synonymous with "cumulative" or "consecutive" when used in the context of criminal sentencing. Indeed, members of this Court have used the same term in this manner in opinions; see e.g. *Goodwill v. State,* 639 S.W.2d 697, 698 (Tex.Cr.App.1982) (dissenting opinion); *Yuncevich v. State,* 626 S.W.2d 784 (Tex.Cr.App.1982), at note 2; *Ex parte Davis,* 506 S.W.2d 882 (Tex.Cr.App.1974); *Ex parte Reynolds,* 462 S.W.2d 605 (Tex.Cr.App.1970), at note 2; as have members of the Courts of Appeals; see e.g. *Grant v. State,* 635 S.W.2d 933 (Tex.App.—Amarillo 1982, no review hist.); *Nunn v. State,* 625 S.W.2d 790 (Tex.App.—Fort Worth 1981, no review hist.).

In *Grant v. State,* supra, the court addressed and rejected a similar challenge to the use of the words "stacked on" in sentencing:

> *ceased to operate,* or that the punishment shall run concurrently with the other case or cases, and sentence and execution shall be accordingly." (Emphasis added.)

**3.** The appellate record was filed in this Court on May 1, 1980. See Art. 44.11, V.A.C.C.P.; Art. 42.06, V.A.C.C.P.

"The second question presented is whether the use of the language 'stacked' and 'stacked on' is sufficient to show clearly the court's intent to cumulate service of this sentence and to clearly and unequivocally tell the Texas Department of Corrections how long to detain appellant. We think the language used is sufficient to accomplish both of these purposes. "Words defined in dictionaries and with meanings so well understood by a person of ordinary intelligence are not impermissibly vague and indefinite. (citations omitted) Webster's Third New International Dictionary (3rd ed. 1976), defines 'stack' as 'to pile up.' The same dictionary defines 'on,' when used as an adverb, as 'in or into the position of being in contact with the upper surface of something or of being supported from beneath by the upper surface.

"When these definitions are applied and the terms considered in their context, we think the cumulation portion of the sentence adequately definite to show the court's intent to cumulate appellant's sentences. It is also sufficient on its face to convey to the Texas Department of Corrections, ... how long to detain appellant." 635 S.W.2d at 936.

Although the better practice in cumulating sentences is to track the statutory language set out in Art. 42.08, supra, we hold that the use of the words "stacked on" in the instant sentence is sufficient to direct the Texas Department of Corrections that appellant is to be confined pursuant to the instant sentence when the judgments and sentences in the preceding convictions have ceased to operate.

 The State's second contention on rehearing is that we incorrectly stated on original submission that the trial court's order cumulating sentences must be recited in both the judgment *and* the sentence.[4] The State correctly points out that the instant case arose prior to the legislative amendments unifying the judgment and sentence.[5] Under the statute applicable to the instant case, we have held that while a cumulation order may be placed in both the judgment and sentence, a cumulation order placed only in the sentence is valid. *Ex parte Crawford*, 36 S.W. 92, 36 Tex.Cr.R. 180 (1896). *Crawford* has been consistently followed by this Court. See e.g. *Johnston v. State*, 168 Tex.Cr.R. 79, 323 S.W.2d 449 (1959); *Gordon v. State*, 575 S.W.2d 529 (Tex.Cr.App.1979). Therefore, the cumulation order in the instant case is not invalid because it is recited only in the sentence and not in the judgment.

We now turn to appellant's contentions raised on original submission, but not addressed. Appellant first asserts the trial court was "without power" to enter the amended sentence cumulating the sentences because the first sentence is insufficient to cumulate the sentences. If the first cumulation order is invalid, appellant contends that the imposition of cumulated sentences in an amended sentence is impermissible, since we have held that a court may not add a cumulation order onto a sentence after the defendant has suffered punishment under the sentence originally imposed concurrently. See e.g. *Ex Parte Voelkel*, 517 S.W.2d 291 (Tex.Cr.App.1975); *Ex parte Reynolds*, 462 S.W.2d 605 (Tex. Cr.App.1971).

In *Ward v. State*, 523 S.W.2d 681 (Tex. Cr.App.1975), we set out five recommended elements of a cumulation order:

**4.** In the instant case, contrary to our statement on original submission, the trial court's order cumulating the sentences is *not* recited in the judgment, but merely in the sentence, quoted above.

**5.** Former Art. 42.02, V.A.C.C.P., applicable to this case, provides in pertinent part as follows: "A 'sentence' is the order of the court in a felony or misdemeanor case made in the presence of the defendant ... and entered of

record, pronouncing the judgment, and ordering the same to be carried into execution in the manner prescribed by law."
Current Art. 42.02, V.A.C.C.P., effective Sept. 1, 1981, provides:
"The sentence is that part of the judgment or order revoking a probated sentence, that orders that the punishment be carried into execution in the manner prescribed by law."

"(1) the trial court number of the prior conviction;

"(2) the correct name of the court where the prior conviction was taken;

"(3) the date of the prior conviction;

"(4) the term of years of the prior conviction; and

"(5) the nature of the prior conviction."

523 S.W.2d at 682; see also *Ex parte Lewis,* 414 S.W.2d 682 (Tex.Cr.App.1967); *Ex parte Hamilton,* 163 Tex.Cr.R. 283, 290 S.W.2d 673 (1956).

The trial court's original cumulation order in the instant case provides but two of the five recommended elements: The cause numbers of the prior convictions, and the terms of years assessed in the prior convictions. Although the order designates the counties in which the prior convictions were had, it does not give the names of the courts within such counties.

The trial court's amended cumulation order provides three of the five recommended elements, failing to include the dates of the prior convictions and the nature of the prior convictions.

The stated rationale for the five recommended elements of a cumulation order set out above is that:

"A sentence is a final judgment and should be sufficient on its face to effect its purpose without resort to evidence in aid thereof. It should further convey to the authorities at the Texas Department of Corrections or any County jail clear and unequivocal orders of the trial court so that they may know definitely how long to detain the convict or prisoner." *Ex parte Lewis,* supra, 414 S.W.2d at 683.

It is well settled, however, that the inclusion of all elements recommended above is not mandatory:

"Despite the lack of some of the specific and definite recitals recommended, this Court has upheld cumulated sentences which were substantially and sufficiently specific to authorize the punishment sought to be imposed." Id.

See also *Ex parte Davis,* 506 S.W.2d 882 (Tex.Cr.App.1974). Thus although we have generally held that cumulation orders which recite only one of the above elements (the trial court cause number) are insufficient, see e.g. *Ex parte Ashe,* 641 S.W.2d 243 (Tex.Cr.App.1982); *Diaz v. State,* 608 S.W.2d 686 (Tex.Cr.App.1980); "this Court has held cumulation orders valid when such orders contained two, rather than three or more, details of the prior conviction." *Ex parte March,* 423 S.W.2d 916, 918 (Tex.Cr. App.1968) and cases cited therein. Failure to include the correct name of the trial court of the prior convictions is not fatal if, in addition to the cause number, other descriptive elements are present. See *Ward v. State,* supra. Cumulation orders which merely set out the cause number and the correct name of the trial court of the prior conviction have been upheld by this Court. See e.g. *Ex parte Pruitt,* 385 S.W.2d 384 (Tex.Cr.App.1964); *Ex parte Isom,* 168 Tex.Cr.R. 434, 331 S.W.2d 753 (1959); *Ex parte Bell,* 160 Tex.Cr.R. 490, 272 S.W.2d 530 (1954). Finally, a cumulation order which refers only to a prior cause number is sufficient if the order is entered in the same court as the sentence to which it is made cumulative. *Ex parte Davis,* supra; *Ex parte March,* supra; *Ex parte Lewis,* supra.

The rule emerging from these cases is that a cumulation order will be upheld so long as the trial court's description of prior convictions is "substantially and sufficiently specific," *Lewis,* supra, to give notice both to the defendant and to the Department of Corrections exactly which sentences the instant sentence is cumulated with.

We hold that the trial court's original sentence in the instant case, which sets out the county of the prior sentences, the trial court cause numbers, and the terms of years assessed, is substantially and sufficiently specific, and therefore, the cumulation order is valid. Since we uphold the trial court's original sentence cumulating punishments, we need not decide

whether the trial court's amended sentence is valid.[6]

Accordingly, the State's motion for rehearing is granted, and the judgment and sentence as originally pronounced are affirmed.

ONION, P.J., concurs.

CLINTON and TEAGUE, JJ., dissent.

---

6. We note the trial court was authorized under Art. 42.06, V.A.C.C.P., to pronounce a sentence nunc pro tunc prior to the filing of the appellate record with this Court. See Art. 44.11, V.A.C.C.P.; see also *Resnick v. State*, 574 S.W.2d 558 (Tex.Cr.App.1978); *Perkins v. State*, 505 S.W.2d 563 (Tex.Cr.App.1974). The trial court's "amended sentence" in the instant case appears to be in effect a nunc pro tunc sentence.

A trial court may correct a cumulation order nunc pro tunc. See *Ex parte Patterson*, 139 Tex.Cr.R. 489, 141 S.W.2d 319 (1940). It would seem that the addition of descriptive details of the prior offenses inadvertently omitted from the trial court's valid first cumulation order, is "clerical" in nature and thus proper under Art. 42.06, supra.