**Otis T. BELL, a/k/a Trouble Bell, Appellant,**

v.

**The STATE of Texas, Appellee.**

**Nos. 3–88–122–CR to 3–88–124–CR.**

Court of Appeals of Texas, Austin.

June 28, 1989.
Discretionary Review Refused
Oct. 25, 1989.

---

Linda Icenhauer–Ramirez, Austin, for appellant.

Ronald Earle, Dist. Atty. and Robert Smith, Asst. Dist. Atty., Austin, for appellee.

Before SHANNON, C.J., and CARROLL and ABOUSSIE, JJ.

ABOUSSIE, Justice.

A jury found appellant Otis T. Bell, also known as Trouble Bell, guilty of the offense of murder, Tex.Pen.Code Ann. § 19.02(a)(1) (1989), and assessed his punishment at confinement for life in the Texas Department of Corrections. In addition, the trial court revoked Bell's probation in cause numbers 75,249 and 75,401, offenses for which he received five-year sentences. Upon the State's motion, we consolidated the three cases. We will affirm the judgments.

## THE MURDER CONVICTION

The murder occurred on March 3, 1988. Bell and several companions spent the evening of March 2, 1988, driving about, buying and injecting cocaine. In the early evening hours, Bell, Karen Trotter, and a man identified only as Thomas went to the apartment of Bell's cousin, Ernest Presley, at 1126½ Chicon Street, Austin, Texas. Bell gave Presley a pistol and several small bags of cocaine, and then Bell, Trotter, and Thomas left.

Shortly past midnight, Bell and Trotter returned to the apartment. Presley and Barbara Reed Gooden were in the bedroom. Presley admitted the two into the apartment, while Gooden remained in the bedroom. Bell began to insult Gooden, despite Presley's requests that he desist. Apparently, Bell and Gooden had dated as teenagers over twenty years earlier. Presley retrieved Bell's gun from the bedroom, returned to the living room, and gave Bell the gun. Bell and Presley sat facing each other, with a distance of only a few feet between them, and continued to argue. Bell then told Presley, "I'll shoot you," and fired a single shot into Presley's stomach.

Trotter ran from the apartment. Bell came to the bedroom door, the gun still in his hand, and told Gooden to take Presley to the hospital. Bell and Gooden put Presley in a car and drove towards Brackenridge Hospital. Bell hopped out of the car at a stoplight, the gun still tucked in his waistband. Gooden drove Presley to the hospital.

■ Bell brings four points of error regarding the murder conviction. In his first point of error, Bell complains that the evidence was insufficient to support his conviction because the evidence showed that pre-existing injuries caused Presley's death.

Presley was sixty-seven years old at the time of the shooting and partially para-

lyzed as a result of a gunshot wound he had received in his neck some years earlier. This paralysis apparently included his left hemidiaphragm, the major breathing muscle on the left side. He also suffered from hyperintensive cardiovascular disease.

Upon admission to the hospital on March 3, Presley underwent surgery to repair the gunshot wound inflicted by Bell. Approximately three days later, Presley developed pneumonia in both lungs and, despite antibiotics, died of an overwhelming infection.

A person is criminally responsible for his conduct if the result would not have occurred but for his conduct, operating either alone or concurrently with another cause, unless the concurrent cause was clearly sufficient to produce the result and the conduct of the actor clearly insufficient. Tex.Pen.Code Ann. § 6.04(a) (1974). Where a wound causes a disease which produces death, the death is attributable to the wound if there is no evidence of gross neglect or improper treatment. *Turner v. State*, 505 S.W.2d 558 (Tex.Cr.App.1974); *Lowe v. State*, 676 S.W.2d 658 (Tex.App. 1984, pet. ref'd).

Further, if an act of the defendant alleged in the indictment contributed to the victim's death, the defendant is responsible despite concurring causes. *Wright v. State*, 388 S.W.2d 703 (Tex.Cr.App.1965). Hence, a conviction of murder will be sustained where the evidence is sufficient to show that the complications from which the victim died were traceable to the gunshot wound inflicted by the defendant. *See Jones v. State*, 582 S.W.2d 129, 134 (Tex. Cr.App.1979).

Presley's treating physician, Dr. David Stalker, and the Chief Medical Examiner for Travis County, Dr. Robert Bayardo, both testified that without treatment, the gunshot wound alone would have been sufficient to cause death. They also testified that it was unlikely Presley would have developed pneumonia without the gunshot wound. From this testimony, the jury could conclude that the pneumonia was caused by the gunshot wound and there is no evidence that it was caused by anything other than that wound. We find the evi-

dence sufficient to support the verdict that Presley died at least in part as a result of the gunshot wound inflicted by Bell. Bell's first point of error is overruled.

In his second point of error, Bell complains that the trial court erred by impermissibly commenting on the weight of the evidence in violation of Tex.Code Cr.P. Ann. art. 38.05 (1979). At the conclusion of the presentation of evidence in the guilt or innocence phase of the trial, the trial court excused the jury for a recess with the following statement:

> Ladies and gentlemen of the jury, that concludes the evidence that you will hear in the first phase of this trial. I will tell you that we have matters to take up in connection with a charge that must be prepared. We will stand in recess until 9:30—excuse me, 10:30.

After the jury was excused, Bell objected that the trial court's reference to the "first phase" of the trial indicated that it was the court's opinion that there would be a second part of the trial. The trial court noted the objection, stating "I think that was covered in the Court's instruction, that we would go to a punishment phase of this trial only in the event they found Mr. Bell guilty, and for no other reason." In his instructions to the jury during voir dire, the trial court repeatedly referred to the guilt or innocence phase of the trial as "phase one" and the punishment phase as "phase two." He also stated that "in the event, and only in the event that the accused, Mr. Bell, is found guilty of the offense, then there will be the second phase of the trial."

Bell failed to obtain a ruling on his objection, or to request an instruction or mistrial. *Marks v. State*, 617 S.W.2d 250, 252 (Tex.Cr.App.1981). Even if the point were properly before us, however, we would not find that the trial court's statement was a comment on the weight of the evidence reasonably calculated to benefit the State or prejudice Bell. *See Kincade v. State*, 552 S.W.2d 832 (Tex.Cr.App.1977). The trial court repeatedly called the bifurcated stages of the trial "phase one" and "phase

two" and specifically told the jury that phase two would occur only in the event they found appellant guilty. In light of the trial court's explanation to the jury, we do not view the trial court's statement as a comment reasonably calculated to imply that he believed that the evidence weighed in favor of guilt or that he expected the jury to find appellant guilty, thus necessitating a second phase in the trial. We do not find that the comment prejudiced or benefitted either party, nor has appellant shown that it carried "the implication that appellant's conviction was a foregone conclusion." *See Hernandez v. State,* 507 S.W.2d 209 (Tex.Cr.App.1974). Bell's second point of error is overruled.

In his third point of error, Bell complains that the State impermissibly argued "community expectations" to the jury over Bell's objection. During closing argument in the punishment phase of the trial, the State argued:

A jury verdict in a murder case speaks for this community. You're saying: What will Travis County tolerate? What does Travis County think human life is worth?

Bell objected that the statements were "unsworn testimony what the community thinks." Without expressly ruling, the trial court instructed, "Ladies and gentlemen of the jury, you will take the evidence from the witness stand and there alone." The prosecutor continued the argument that the jury, by its verdict, speaks for the community, reminding the jury that their verdict is public and is noticed by the district attorney's office, the police, and those persons in jail. "And your verdicts day in and day out deter other people like (Bell) ... and will prevent (Bell) from hurting another person."

■ Bell's point of error does not comport with the objection made at trial and therefore fails to preserve error. Tex.R. App.P.Ann. 52(a) (Supp.1989); *Teague v. State,* 703 S.W.2d 199, 203 (Tex.Cr.App. 1986). Bell objected generally that the State was arguing outside the record, not that the prosecutor was impermissibly asking the jury to assess punishment based upon public sentiment. Further, Bell did not obtain a ruling on his objection, request an instruction or ask for a mistrial after making his objection. *Nastu v. State,* 589 S.W.2d 434, 441 (Tex.Cr.App.1979). Nevertheless, Bell received more relief than he requested, as the trial court instructed the jury to disregard any evidence outside the record. Any error was cured by this instruction, *Anderson v. State,* 633 S.W.2d 851, 855 (Tex.Cr.App.1982), and any further complaint is waived, *Braxton v. State,* 528 S.W.2d 844 (Tex.Cr.App.1975). *See Powell v. State,* 475 S.W.2d 934 (Tex.Cr.App.1972).

■ Even assuming the complaint on appeal is properly before this court, we would hold that the State's argument did not constitute reversible error. The prosecutor reminded the jury that its verdict is the voice of the community, heeded by law enforcement officials and criminal offenders alike, having a deterrent effect on the latter by showing what punishment an offender could expect to receive for committing murder in Travis County. The State's jury argument was a permissible plea for law enforcement which asked the jury to speak for the community. *See Goocher v. State,* 633 S.W.2d 860 (Tex.Cr.App.1982); *Hicks v. State,* 545 S.W.2d 805, 810 (Tex.Cr.App. 1977); *Brown v. State,* 508 S.W.2d 91 (Tex. Cr.App.1974). It did not ask the jury to listen to the community or imply that the community expects, requires, or desires a particular sentence. *See Cortez v. State,* 683 S.W.2d 419 (Tex.Cr.App.1984); *Prado v. State,* 626 S.W.2d 775 (Tex.Cr.App.1982).

Bell suggests that the argument complained of could not be cured by instruction and is reversible error because it probably caused him to receive a life sentence. Tex. R.App.P.Ann. 81(b)(2) (Supp.1989). In making the determination whether a statement is manifestly improper, harmful, and prejudicial, we look at the record as a whole. *Willis v. State,* No. 69,936 (Tex. Cr.App., June 7, 1989) (not yet reported); *Curtis v. State,* 640 S.W.2d 615 (Tex. Cr.App.1982). It is more likely that Bell received a life sentence after the jury considered: (1) that Bell killed his partially paralyzed, elderly cousin by shooting him at

close range, (2) the facts presented surrounding the shooting, and (3) that Bell had eleven prior convictions, including several offenses involving shootings and the use of weapons. Bell's third point of error is overruled.

■ In his fourth point of error, Bell argues that the order of the trial court purporting to cumulate his sentence is void because it contains only the cause numbers of the other convictions with which his sentence is cumulated. The order provides:

Said sentence shall begin when the said judgments and sentences preceding (sic) convictions under criminal cause number 75,249; styled: The State of Texas vs (sic) Otis T. Bell, and criminal cause number 75,401; styled: The State of Texas vs (sic) Otis T. Bell, shall have ceased to operated (sic) and that the sentence in this cause is to be cumulative with the sentences in in (sic) criminal cause number 75,249 and 75,401.

The Court of Criminal Appeals recommends that a cumulation order contain five elements to describe the prior convictions: (1) the trial court number, (2) the trial court name, (3) the date of conviction, (4) the term of years, and (5) the nature of the conviction. *Ward v. State*, 523 S.W.2d 681 (Tex.Cr.App.1975). It is well settled that the inclusion of all the recommended elements is not mandatory. *Ex parte Lewis*, 414 S.W.2d 682 (Tex.Cr.App.1967). A cumulation order which refers only to the prior cause number is sufficient if the order is entered in the same court as the sentence to which it is made cumulative. *Williams v. State*, 675 S.W.2d 754, 764 (Tex.Cr.App.1984) (on motion for rehearing), *citing, Ex parte March*, 423 S.W.2d 916 (Tex.Cr.App.1968); *Ex parte Lewis*, 414 S.W.2d 682 (Tex.Cr.App.1967). Bell invites this court to overrule *March* and *Lewis* as outdated. Had we the power to overrule these authorities, we would decline to do so, especially since the Court of Criminal Appeals recently reaffirmed those holdings in *Williams*.

The same judge presided over all three of Bell's convictions now on appeal and pronounced the sentences in open court in the 167th district court of Travis County, Texas. In the murder trial, the jury returned the verdict of guilt in cause number 90,959 on May 3 and assessed the life sentence on May 4. On May 23, the court held the revocation hearing in cause number 75,249. On May 24, the court held the hearing on the motion to revoke cause number 75,401. Immediately at the close of this last hearing, the court called all three causes for sentencing, one after the other. The judge sentenced Bell to five years imprisonment in each revocation, pronouncing that "in cause no. 75,249 and 75,401—that those cases shall run concurrently." He then sentenced appellant to a term of life imprisonment in cause number 90,959, stating:

I will order that sentence to run consecutively with the cause no. 75,401 and 75,-249. That means simply that you must discharge those sentences before this. I intend to stack 90,959. The judgment that is entered shall be—shall reflect that they shall run consecutively, not concurrently.

The trial court's oral pronouncement of sentence in Bell's presence in open court clearly informed Bell that he was sentenced to serve his two five-year sentences concurrently and thereafter to serve his life sentence. The court's written order reflects this fact.

We note further that, if necessary, this court has the necessary data and evidence before it to reform the judgment on appeal. *See Knight v. State*, 581 S.W.2d 692 (Tex. Cr.App.1979); *Joles v. State*, 563 S.W.2d 619 (Tex.Cr.App.1978); *Vasquez v. State*, 477 S.W.2d 629 (Tex.Cr.App.1972). In light of *Williams* and the authorities cited therein, we hold that the trial court's written sentence is sufficiently specific and, therefore, the cumulation order is valid. Bell's fourth point of error is overruled. The murder conviction is affirmed.

### THE PROBATION REVOCATIONS

Bell appeals the revocation of his probation in cause number 75,249. The trial court convicted Bell of failure to stop and render aid, Tex.Rev.Civ.Stat.Ann. art. 6701d, §§ 38, 40 (1977 & Supp.1989), and,

pursuant to a plea bargain, assessed punishment at five years confinement, probated. Bell also appeals the revocation of his probation in cause number 75,401. The trial court convicted Bell of aggravated assault, Tex.Pen.Code Ann. § 22.02 (1989), and, pursuant to a plea bargain, assessed punishment at five years confinement, probated, and a five hundred dollar fine. Bell was on probation for both offenses at the time of Presley's murder.

In its motion to revoke probation in each case, the State alleged that appellant had violated his terms of probation by committing murder (Presley's) and by possessing cocaine. The court heard the revocations consecutively on May 23 and 24, 1988. At the hearings, the State proved that Bell possessed cocaine [1] and the trial court revoked both of his probations, sentencing him to five years imprisonment in each cause.

Bell complains in each case that the trial court erred in allowing him to represent himself at the hearings and that the trial court erred in failing to warn him adequately of the dangers and disadvantages of self-representation.

■ A probationer is entitled to counsel, whether retained or appointed, at the time of a revocation hearing unless the probationer affirmatively waives that right. *Gagnon v. Scarpelli*, 411 U.S. 778, 93 S.Ct. 1756, 36 L.Ed.2d 656 (1973); *Parker v. State*, 545 S.W.2d 151, 155 (Tex.Cr.App. 1977); Tex.Code Cr.P.Ann. art. 42.12, § 3b (Supp.1989). A waiver of counsel must be knowingly and intelligently made and the defendant must be made aware of the dangers and disadvantages of self-representation. *Faretta v. California*, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975); *Blankenship v. State*, 673 S.W.2d 578 (Tex. Cr.App.1984). If the defendant chooses to represent himself, even after the appropriate warnings, that choice must be honored. *Blankenship*, 673 S.W.2d at 584.

■ On April 8, the court appointed an attorney to represent Bell in all three pending causes. Bell was represented by counsel at his murder trial. At the hearing on cause number 75,249, Bell announced for the first time that he did not want his appointed counsel to represent him and, expressly citing U.S. Const. amend. VI and Tex.Code Cr.P.Ann. art. 1.051 (Supp.1989), asked that he be allowed to represent himself. The trial court responded:

> Mr. Bell, let the Court advise you that you have an absolute right to represent yourself in any legal proceedings. That if you do so, that you will be giving up a great advantage of having someone that is trained under the law who understands the rules of procedure. That the Court has no intention of representing you.... That if you represent yourself, you'll be held to the same standard. You will not be granted any leeway in connection with the rules. You'll be held to the same rules that an attorney would be held to.... I would strongly advise against you representing yourself. It will be to your detriment. I think that cases time and time again show that those individuals, unless they have training in the law, have serious problems about representing themselves.

The trial court inquired about Bell's formal and legal education and whether Bell understood that he was giving up a substantial right. He repeated his admonition that Bell would be held to the same standard as if an attorney represented him and that self-representation would most likely be to Bell's detriment. Bell articulated that he understood the charge and possible punishment and his appointed counsel stated that he had explained to Bell these and other legal matters regarding the hearing. Bell responded to each inquiry by insisting to the trial court that he wished to represent himself. He made no complaint about his appointed counsel; but, on inquiry, the court informed him he would not appoint different counsel. The record shows that roughly twenty pages of the statement of

---

**1.** Five small bags of cocaine were found in Bell's possession upon his arrest for the murder of Presley.

facts is taken up with the court's inquiry before he permitted Bell to represent himself and commenced the hearing. Bell signed a statement, as required by Tex.R. Cr.P.Ann. art. 1.051(g) (1989), that he understood his rights and waived his right to counsel. The trial court then allowed Bell to represent himself, but required that his appointed counsel remain available should Bell choose to seek his advice during the hearing.

A review of the record shows that Bell was adequately informed of the dangers and disadvantages of self-representation and made his decision knowingly and intelligently. The trial court was required to honor appellant's affirmative waiver of counsel and insistence on self-representation. Bell's first and second points of error in cause number 75,249 are overruled.

The next day, the trial court heard the motion to revoke in cause number 75,401. The trial court announced that it took judicial notice "of the proceedings in Cause No. 75,249 that I heard and all the witnesses that I heard in that connection and all exhibits that were received into evidence at that time." Bell requested that the trial court allow him to represent himself as he had done the day before or else appoint him a new attorney. The trial court stated that he would not appoint new counsel for Bell as he was not entitled to counsel of his choosing, finding that appointed counsel had effectively and adequately represented Bell at each stage of the proceedings in all three cases. Several times the judge repeated his warning of the previous day that self-representation would be to Bell's detriment and that he would be held to the same standards as an attorney. Bell stated that he understood the charges and the range of possible punishment. Bell again affirmed that he chose to represent himself and signed a statement, as required by Tex.R. Cr.P.Ann. art. 1.051(g) (1989), that he understood his rights and waived his right to counsel. The trial court then permitted Bell to represent himself, but again required his appointed counsel remain available should Bell choose to seek his advice.

The record again reflects that Bell was adequately informed of the dangers and disadvantages of self-representation and made his decision knowingly and intelligently. Bell states that dissatisfaction with his appointed counsel caused him to proceed *pro se,* but he does not complain on appeal of the trial court's failure to appoint him new counsel or of inadequate representation by his court-appointed attorney in any of the proceedings. Indeed, Bell was not entitled to new counsel as he failed to show any cause for the appointment of a new attorney. The trial court refused to appoint new counsel after stating that Bell received adequate representation in his murder trial and that he was satisfied, based on appointed counsel's statements, that counsel had adequately prepared for the revocation hearings. Bell's first and second points of error in cause number 75,401 also are overruled.

In his third point of error in cause number 75,249, Bell complains that the trial court erred by including in the judgment a finding that he violated his probation by causing the death of Presley, because no evidence supported that allegation. We agree.

In its motion to revoke probation, the State alleged that Bell violated his probation by possessing cocaine and by committing murder. At the hearing, the State proceeded only on the charge of possession, although the judgment incorrectly reflects that court revoked probation on evidence of both offenses. We will reform the judgment in cause number 75,249 to delete any reference to the murder conviction and to reflect that probation was revoked only on proof of possession of cocaine as alleged. Bell's third point of error is sustained.

The judgment in cause number 75,401 is affirmed. The judgment in cause number 75,249 is reformed and, as reformed, is affirmed. For the reasons stated, the murder conviction in cause number 90,959 also is affirmed.

Reformed and, as Reformed, Affirmed as to Cause No. 3–88–122–CR.

Affirmed as to Cause Nos. 3–88–123–CR and 3–88–124–CR.