11th
Court of Appeals

                                                                  Eastland,
Texas

                                                                        Opinion

 

Omar
Alberto Ramirez

Appellant

Vs.      
            No. 11-01-00230-CR
--  Appeal from Dallas County

State of Texas

Appellee

 

The jury
convicted appellant of aggravated sexual assault and assessed his punishment at
confinement for life and imposed a fine of $10,000.  We affirm.

The victim
testified that an unknown Hispanic male came to her apartment on the afternoon
of July 3, 2000, posing to be an air conditioner repairman.  After the victim permitted him to enter her
apartment, the man threatened the victim and her child with a knife if the
victim did not have sex with him.[1]  The man first ordered the victim to take off
her clothes and then forced her to have intercourse with him.  








The police
apprehended appellant near the victim=s apartment on that same afternoon. 
The police had received reports of two other attacks on women on that
day at apartments located within close proximity to the victim=s apartment. 
The two attacks were committed by a Hispanic male posing as a
repairman.  The police considered appellant
to be a suspect in the three attacks.  
Appellant was arrested for presenting counterfeit immigration paperwork
to the police.[2]   A few hours after the assault, the police
presented a photographic lineup to the victim.   The victim identified appellant as her assailant.  The other two assault victims also
identified appellant as their assailant when presented with the same photographic
lineup.  After the victim identified
appellant, the investigating detective questioned appellant regarding the
assault.  Appellant denied assaulting
the victim, and  the detective requested
appellant=s consent to give a tissue sample for
possible DNA comparison.   Appellant
executed a written consent form permitting his tissue sample to be
collected.       The victim also identified appellant as her assailant at trial,
testifying that she would never forget his face.  She also identified the knife which was recovered from appellant
as being the knife used by her assailant. 
The State=s DNA expert testified that appellant=s DNA profile was consistent with the DNA
profile of spermatozoa found on the victim. The expert further testified that,
in the Texas Hispanic population, the random match probability for the DNA
profile of the spermatozoa was 1 in 222 quadrillion.

Appellant
testified that he went to work early on the morning in question.  He got off work early in the afternoon and
walked to a friend=s
apartment.[3]  He then walked to his sister=s apartment. 
Appellant stated that he was waiting for his sister to return home when
the police arrived.  Appellant testified
that his sister lives very close to the victim=s apartment.  He further
testified that he had seen and exchanged greetings with the victim on several
occasions as he walked past her apartment on his way to or from his sister=s apartment. 
Appellant asserted that this is a case of mistaken identity because his
face looked familiar to the victim when she observed the photographic lineup
because of their past encounters.  In
rebuttal to appellant=s
account of his whereabouts on the day in question, the State called the other
two victims who had identified appellant as their attackers.  Both of these victims testified that
appellant had tried to attack them in their apartments on the day in question
by posing as a repairman.  








Appellant
presents three issues on appeal.  First,
he attacks the in-court identification by the victim as being the result of an
impermissibly suggestive lineup procedure. 
Appellant filed a pretrial motion to suppress the evidence of
identification which the trial court overruled.  An in-court identification is inadmissible when it has been
tainted by an impermissibly-suggestive pretrial photographic
identification.  Loserth v. State, 963
S.W.2d 770, 771-72 (Tex.Cr.App.1998). 
Determining the admissibility of an in-court identification that is
challenged by a defendant requires a two-step analysis.  First, we consider whether the pretrial
identification procedure was impermissibly suggestive.  Barley v. State, 906 S.W.2d 27, 33
(Tex.Cr.App.1995), cert. den=d, 516 U.S. 1176 (1996).  Second,
if the procedure was impermissibly suggestive, we determine whether the
procedure gives rise to a very substantial likelihood of irreparable
misidentification.  Barley v. State,
supra at 33.  The defendant bears the
burden to prove these two elements by clear and convincing evidence.  Barley v. State, supra at 34.  If the totality of the circumstances reveals
no substantial likelihood of misidentification despite an impermissibly
suggestive pretrial procedure, the in-court identification testimony will be
deemed reliable.  Loserth v. State,
supra at 772.  

Whether
the trial court erred in admitting into evidence a witness= identification of the accused involves a
mixed question of law and fact.  Loserth
v. State, supra at 772-73.  We extend
great deference to the trial court=s resolution of the historical facts pertinent to the case.  Loserth v. State, supra at 773.  However, the consequences arising from the
historical facts are reviewed de novo. 
Loserth v. State, supra at 773-74.   
Thus, under the applicable case law, we will conduct a de novo review of
the trial court=s decision to deny the motion to suppress the
in-court identification which appellant claimed was based on an impermissibly
suggestive lineup.

Appellant
argues that the photographic lineup was conducted in an impermissible
manner.  He contends that the detective
who conducted the lineup impermissibly informed the victim that a suspect had
been arrested and that the suspect=s photograph was included in the lineup.[4]  While this may have suggested that the
victim should identify one of the photographs, it was not an impermissible
suggestion.  A photographic lineup is
not rendered unnecessarily suggestive simply because the victim is told that it
contains a suspect because the victim would normally assume that to be the case
when presented with a lineup.  See
Harris v. State, 827 S.W.2d 949, 959 (Tex.Cr.App.), cert. den=d, 506 U.S. 942 (1992). 
Moreover, there is no evidence that the detective suggested to the
victim that she should identify appellant as her assailant.








Appellant
also contends that the lineup was impermissibly suggestive because of
differences between his appearance and the appearance of the other men.   Appellant argues that the other men
appeared to be younger than he was and that they lacked the distinctive facial
hair pattern which he possessed.  The
photographic lineup consisted of photographs of the upper torso of six Hispanic
males.   Each of the men had some degree
of facial hair, ranging from a mustache to a mustache and goatee.     The fact that the other men do not have features
identical to appellant=s
appearance does not automatically invalidate a photographic lineup.  See Dickson v. State, 492 S.W.2d 267, 271
(Tex.Cr.App.1973).  Neither due process
of law nor common sense requires that pictures in a lineup be individuals whose
every feature matches.  Dickson v.
State, supra at 271.  Physical discrepancies
between individual photographs in a lineup are not inherently impermissibly
suggestive.  See Williams v. State, 675
S.W.2d 754, 757 (Tex.Cr.App.1984).  We
find that the dissimilarities between appellant=s appearance and those of the other men were not such as to
impermissibly suggest to the victim to identify appellant as her
assailant.  

Moreover,
even if we were to conclude that the lineup in this case was impermissibly
suggestive, we would be compelled to conclude that it did not give rise to a
substantial likelihood of irreparable misidentification.  Where a lineup is found to be impermissibly
suggestive, many factors are considered to further determine whether that
suggestive procedure gave rise to a substantial likelihood of irreparable
misidentification.  The following
nonexclusive factors should be weighed against the corrupting effect of any
suggestive identification procedure in assessing reliability under the totality
of the circumstances: (1) the opportunity of the witness to view the criminal
at the time of the crime; (2) the witness= degree of attention; (3) the accuracy of the witness= prior description of the criminal; (4) the
level of certainty demonstrated by the witness at the confrontation; and (5)
the length of time between the time and confrontation.  Neil v. Biggers, 409 U.S. 188, 199 (1972);
Ibarra v. State, 11 S.W.3d 189, 195 (Tex.Cr.App.1999), cert. den=d, 531 U.S. 828 (2000).  We
consider these five factors deferentially in a light favorable to the trial
court=s ruling.  
Loserth v. State, supra, at 773-74. 
The factors, viewed in this light, are then weighed de novo against the
corrupting effect of the suggestive pretrial identification procedure.  Loserth v. State, supra, at 773-74.








The victim
had ample opportunity to observe the assailant in this case.  He confronted the victim in her apartment
and forced her to engage in sexual intercourse with him.  He did not wear a mask during the
attack.  The photographic lineup was
presented to the victim only a few hours after the attack.  The victim began to cry hysterically when
she saw appellant=s
photograph.  The victim testified that
she would never forget her assailant=s face.  She further testified
that her in-court identification of appellant was based in part upon her
recollection of appellant=s face independent of the lineup. 
We do not find a substantial likelihood of misidentification in this
case.  Appellant=s first issue is overruled.

Appellant
argues in his second issue that the trial court erred in overruling his motion
to suppress evidence seized from him. 
Appellant filed a pretrial motion entitled AMotion to Suppress Illegal Search and
Seizure.@  The
motion sought to suppress the State=s recovery of a tissue sample from appellant for purposes of DNA
comparison.  He argued in the motion
that the taking of the sample was improper for the following reasons: (1) the
probable cause for taking the sample was based on an impermissible suggestive
identification process and was the result of coercion, enticement, persuasion,
threat and repetition, and prolonged interrogation; (2) defendant was deprived
of his right to counsel and did not intelligently and knowingly waive his right
to counsel; and (3) the interrogators failed to render any tests to determine
whether the defendant was mentally competent, literate, or otherwise capable of
understanding his rights against self-incrimination and his rights under TEX.
CODE CRIM. PRO. ANN. art. 38.22 (Vernon 1979 & Pamph. Supp. 2002).  The
trial court conducted a hearing which focused on the three grounds alleged in
appellant=s motion. 
The detective who recovered the tissue sample testified that he
questioned appellant about the offense after the victim identified him as her assailant.  The detective began the questioning by
advising appellant of his rights in Spanish.[5]  Appellant proclaimed his innocence during
the questioning.  The detective advised
appellant that appellant could establish his innocence by giving a tissue
sample for DNA testing.  Appellant
executed a form printed in Spanish wherein he gave his written consent to the
taking of the tissue sample.  The
detective testified that appellant understood the admonishments contained on
the consent form and that appellant cooperated in the process of taking the
tissue sample from inside of his mouth. 









Appellant
argues on appeal that the evidence should have been suppressed because there
was no probable cause to arrest him.  It
does not appear that appellant raised this ground for suppression at
trial.  This complaint is, therefore,
waived for appellate review.  See
TEX.R.APP.P. 33.1(a).  Voluntary consent
is a permissible basis upon which a warrantless search may be conducted.  See Johnson v. State, 68 S.W.3d 644, 652-53
(Tex.Cr.App.2002).  In determining
whether an accused=s
consent to search is voluntary, appellate courts must look to the totality of
the circumstances.  See Johnson v.
State, supra at 653.  Consent is not
rendered involuntary merely because the accused is under arrest at the time
consent is requested.  See Johnson v.
State, supra at 653.  The record in this
cause supports the trial court=s implied finding that appellant knowingly and voluntarily consented to
the taking of the tissue sample.  Issue
No. 2 is overruled.

Appellant
attacks the factual sufficiency of the evidence in his third issue.   When reviewing the factual sufficiency of
the evidence, we review all the evidence, but not in the light most favorable
to the prosecution.  Clewis v. State,
922 S.W.2d 126, 129 (Tex.Cr.App.1996); Reaves v. State, 970 S.W.2d 111, 116
(Tex.App. - Dallas 1998, no pet=n). We reverse only if: (1) the evidence
in support of the verdict, considered as standing alone, is factually too weak
to support it or (2) the verdict is so contrary to the overwhelming weight of
the evidence as to be clearly wrong and unjust.  Goodman v. State, 66 S.W.3d 283, 285-86 (Tex.Cr.App.2001);
Johnson v. State, 23 S.W.3d 1, 7 (Tex.Cr.App.2000). A decision is not clearly
wrong and unjust merely because the fact finder resolved conflicting evidence
in favor of the State. Cain v. State, 958 S.W.2d 404, 408 (Tex.Cr.App.1997).   The
evidence in support of the verdict is not factually insufficient standing
alone, given the victim=s identification of appellant as her assailant and the DNA evidence
linking appellant to the crime. 
Furthermore, the evidence contrary to the verdict is not so overwhelming
as to render the verdict clearly wrong and unjust.  Issue No. 3 is overruled.

The
judgment of the trial court is affirmed. 


 

TERRY
McCALL

JUSTICE

July 25, 2002

Do not publish.  See TEX.R.APP.P. 47.3(b).

Panel consists of: Arnot, C.J., and

Wright, J., and McCall, J.











     [1]The victim was seven month=s pregnant at the time of the assault.  





     [2]Appellant was a citizen of Honduras.





     [3]Appellant did not recall the friend=s last name. 
The friend did not testify at trial.





     [4]The evidence regarding the detective=s statements to the victim is not clear.  The detective denied telling the victim that
the suspect=s photograph was in the lineup.  The victim testified through an interpreter,
and her testimony on this point is not clear. 
We will assume that the detective advised the victim of the suspect=s arrest for the purpose of considering appellant=s argument.





     [5]The detective testified that he was fluent in Spanish.