**In the Interest of A.H.L., III, a Child.**

**No. 08–05–00307–CV.**

Court of Appeals of Texas,
El Paso.

Oct. 26, 2006.

Rehearing Overruled Dec. 6, 2006.

Lana Shadwick, Texas Department of Family & Protective Services, Houston, for appellee.

Mimi Smith, Alpine, Attorney Ad Litem.

Alvaro Luna Hernandez Jr., Gatesville, appellant pro se.

Before McCLURE, J., CHEW, J., and BARAJAS, C.J. (Ret.).

## OPINION

ANN CRAWFORD McCLURE, Justice.

Alvaro Luna Hernandez, Jr., *pro se,* appeals from a judgment terminating his parental rights to A.H.L. For the reasons that follow, we affirm.

## FACTUAL SUMMARY

Hernandez and Maria Imelda Rodriguez are the parents of ten-year-old A.H.L., who was born on July 31, 1996. On June 9, 1997, a jury found Hernandez guilty of aggravated assault of a public servant[1] committed on July 18, 1996, less than two weeks before A.H.L.'s birth. The jury also found that Hernandez had previously been convicted of capital murder on January 20, 1976 and of jail escape on March 2, 1970, and it assessed Hernandez's punishment at imprisonment for a term of fifty years. Hernandez is presently serving that sentence in the Texas Department of Criminal Justice, Institutional Division, and he is not eligible for parole until 2021.

Hernandez and Rodriguez divorced in 1998 and Rodriguez was appointed sole managing conservator. Rodriguez had problems with substance abuse and did not provide adequate supervision of the child. Consequently, he was often found "out and about in the community" by himself, and between the ages of five and eight, he began engaging in inappropriate conduct such as shoplifting, vandalism, and assault. On one occasion, he threatened another child with a pocketknife. Due to his young age, A.H.L. could not be handled as a juvenile. A juvenile probation officer

---

1. A witness testified that Hernandez committed the aggravated assault against the sheriff.

would often wait with him at the police station until either his mother or grandmother could be located. Finally, the Department of Family and Protective Services removed the boy from his mother's home due to inadequate supervision.

On June 29, 2004, the Department filed a petition to terminate the parental rights of both Hernandez and Rodriguez. Hernandez, acting *pro se*, filed an answer, affirmative defenses, and a counter-claim seeking monetary damages against Governor Rick Perry, and the executive director and board members of the Department. On February 15, 2005, Hernandez requested the appointment of an attorney ad litem to represent him "in his vigorous opposition to the termination of his parent-child relationship." Two days later, he sought a bench warrant so that he could present testimony and "prosecute his case *pro se*, in relation to all the procedural pleadings he has filed in this proceeding." The Department also asked to have Hernandez bench-warranted for the jury trial. The trial court appointed Bonnie Bratton as attorney ad litem. It then granted Hernandez's motion for a bench warrant and ordered that he be brought to Brewster County for trial which was at that time set for June 14, 2005. The court later revoked the warrant and issued one for an August 29 trial date.

Shortly before trial, the court revoked the second warrant based on its findings that Hernandez represented a high security risk, and that the cost and inconvenience of transporting Hernandez, and providing for increased security in the courtroom and in the jail, outweighed the jury's need to observe Hernandez's demeanor.

In the meantime, Ms. Bratton requested that she be allowed to withdraw from representation, or alternatively, that the scope of her representation be limited strictly to the termination proceeding. Bratton asked that Hernandez be allowed to represent himself in connection with his counter-claims and certain affirmative defenses upon which Hernandez insisted but which she believed should not be asserted. A short time later, Hernandez filed a motion in which he waived his right to counsel and asked that Bratton be dismissed so he could exercise his right of self-representation. The trial court heard these issues on April 20, 2005. Hernandez participated in the hearing via telephone. The court denied Bratton's motion to withdraw but clarified the appointment by ordering that counsel did not have a duty to represent Hernandez: (1) in any claims for monetary damages, (2) in any claims or affirmative defenses involving an assertion that the Department had lost and forfeited legal authority and jurisdiction to act as a state agency or to pursue its statutory duties; (3) in any claims or affirmative defenses attempting to relitigate the facts or legal issues of Hernandez's legal convictions for the purpose of showing that Hernandez had not engaged in any criminal conduct; (4) in any claims under the Americans With Disabilities Act on behalf of A.H.L. or Rodriguez or other children in Texas; (5) in any affirmative defenses under the Americans With Disabilities Act based upon the classification of A.H.L. or Rodriguez or other children in Texas; and (6) any constitutional claims on behalf of A.H.L. and Rodriguez. At a subsequent hearing, the judge orally denied Hernandez's motion to represent himself but indicated that he would reconsider the issue before trial. He advised Hernandez to notify him if counsel failed to take any actions that Hernandez believed she should.

Prior to trial, Rodriguez voluntarily relinquished her parental rights and the trial court entered judgment. A jury found

that termination of Hernandez's parental rights was in the child's best interests and that Hernandez had knowingly engaged in criminal conduct that had resulted in conviction of an offense and confinement or imprisonment and inability to care for his son for not less than two years from the date the petition was filed. The trial court entered judgment terminating Hernandez's parental rights. Hernandez timely filed a *pro se* notice of appeal, and a combined motion for new trial and statement of the points he intended to raise on appeal.

## SELF–REPRESENTATION AND BENCH WARRANT

Hernandez's first two issues concern the trial court's refusal to allow him to represent himself or to participate in the trial except through affidavit or deposition. We will first address the denial of the bench warrant because it impacts the self-representation claim raised in Issue One.

### *Denial of Motion for Bench Warrant*

In Issue Two, Hernandez complains that the trial court abused its discretion by denying his request for a bench warrant because the court's security concerns were not particularized and were exaggerated. Litigants cannot be denied access to the courts simply because they are inmates. *In re Z.L.T.*, 124 S.W.3d 163, 165 (Tex.2003). However, an inmate does not have an absolute right to appear in person in every court proceeding. Id. The inmate's right of access to the courts must be weighed against the protection of our correctional system's integrity. *Id.* Trial courts are required to consider several factors when deciding whether to grant an inmate's request for a bench warrant, including: (1) the cost and inconvenience of transporting the prisoner to the courtroom; (2) the security risk the prisoner

presents to the court and public; (3) whether the prisoner's claims are substantial; (4) whether the matter's resolution can reasonably be delayed until the prisoner's release; (5) whether the prisoner can and will offer admissible, noncumulative testimony that cannot be effectively presented by deposition, telephone, or some other means; (6) whether the prisoner's presence is important in judging his demeanor and credibility; (7) whether the trial is to the court or a jury; and (8) the prisoner's probability of success on the merits. Id. at 165–66.

The litigant requesting the bench warrant bears the burden of establishing his right to relief and he must provide factual information demonstrating why his need to appear outweighs the impact on the correctional system. Id. at 166. The trial court does not have a duty to independently inquire into the necessity of an inmate's appearance beyond the contents of the bench warrant request. Id. We review a trial court's ruling on a bench warrant request for an abuse of discretion. Id. at 165.

Sheriff Ronnie Dodson testified during a pretrial hearing that he was familiar with Hernandez's criminal history, including the aggravated assault committed against then-sheriff Jack McDaniels when Hernandez disarmed McDaniels and went on the run with the sheriff's gun. Sheriff Dodson expressed his opinion that extra precautions would be warranted if Hernandez were brought to Brewster County to participate in the trial. The trial judge discussed on the record his reasons for revoking the bench warrant. The judge noted that counsel for Hernandez had requested that Hernandez be shackled while in the courtroom because she feared for her own safety. Additionally, the judge had spoken with the sheriff about his security plans for Hernandez's trial and had learned that

the sheriff planned to have ten deputies devoted exclusively to the security of the courthouse, the prisoner, and the jail while Hernandez was present. The court also was aware of Hernandez's criminal history, including his conviction of capital murder and the aggravated assault conviction for which he is presently incarcerated. Based on the costs and the security implications for the county, the court determined that the bench warrant should be revoked. Hernandez would participate in the trial through counsel and he would be allowed to testify by deposition. But Hernandez refused to participate in the deposition and insisted that he should be physically present at trial and allowed to proceed *pro se.*

Given Hernandez's criminal history, the court's security concerns are supported by the record. Additionally, the sheriff's security plan would necessitate additional costs and inconvenience for the county because ten deputies would be required to devote their time exclusively to providing security. The case cannot be delayed until Hernandez's release because he will not be eligible for parole until 2021. Nothing in the record suggests that Hernandez could not have offered admissible noncumulative testimony via deposition, telephone, or some other means. Finding no abuse of discretion in the denial of the bench warrant, we overrule Issue Two.

### *Self–Representation*

■■■ In Issue One, Hernandez contends that the trial court violated his right of self-representation by appointing counsel to represent him over his objections. There is no constitutional right to appointed counsel in every termination proceeding. *Lassiter v. Department of Social Services,* 452 U.S. 18, 27–32, 101 S.Ct. 2153, 2159–62, 68 L.Ed.2d 640 (1981). Rather, an indigent parent's constitutional right to counsel under the Fourteenth Amend-

ment's Due Process Clause must be made on a case-by-case basis. Id. Texas has adopted a higher standard by mandating the appointment of an attorney ad litem for an indigent parent who opposes the termination of the parent-child relationship in a suit filed by a governmental entity. TEX.FAM.CODE ANN. § 107.013(a)(1)(Vernon Supp.2006)("In a suit filed by a governmental entity in which termination of the parent-child relationship is requested, the court shall appoint an attorney ad litem to represent the interests of an indigent parent of the child who responds in opposition to the termination"); *see In re K.L.,* 91 S.W.3d 1, 4–5 (Tex.App.-Ft. Worth 2002, no pet.). Having undertaken to grant the right to counsel, the State must administer that right consistent with the Due Process Clause. *In re K.L.,* 91 S.W.3d at 6. Thus, the right to counsel provided by Section 107.013 has been construed as including the right to effective assistance of counsel. *See In re K.L.,* 91 S.W.3d at 13.

Section 107.013 does not expressly provide for an indigent parent's right of self-representation and the trial court construed the mandatory language of the statute as prohibiting Hernandez from proceeding without the benefit of appointed counsel. In arguing that he has a right to self-representation, Hernandez relies on the Sixth Amendment of the United States Constitution, the Supreme Court's decision in *Faretta v. California,* 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975), and Article I, Section 10 of the Texas Constitution.

Article I, Section 10, provides an accused in a criminal prosecution with certain rights including the "right of being heard by himself or counsel, or both." While Article I, Section 10 guarantees criminal defendants the right of self-representation, this right is not extended to civil litigants.

In *Faretta v. California*, the Supreme Court held that a criminal defendant not only has the right to counsel under the Sixth Amendment, but also "has a constitutional right to proceed without counsel when he voluntarily and intelligently elects to do so." *Faretta*, 422 U.S. at 807, 95 S.Ct. at 2527. *Faretta's* conclusion is based on three inter-related arguments: the history of the right of self-representation protected by federal and state law since the beginning of our nation (*Faretta*, 422 U.S. at 812–17, 95 S.Ct. at 2530–32); the structure of the Sixth Amendment which guarantees an accused the right to personally make his own defense (*Faretta*, 422 U.S. at 818–32, 95 S.Ct. at 2532–40); and respect for the individual (*Faretta*, 422 U.S. at 834, 95 S.Ct. at 2541). *See Martinez v. Court of Appeal of California*, 528 U.S. 152, 154, 120 S.Ct. 684, 687, 145 L.Ed.2d 597 (2000)(applying reasoning of *Faretta* and finding no right to self-representation on appeal of criminal conviction).

As the Supreme Court noted in Martinez, the historical evidence relied upon by *Faretta* as identifying a right of self-representation is not always useful because it pertained to times when lawyers were scarce, often mistrusted, and not readily available to the average person accused of crime. *Martinez*, 528 U.S. at 156, 120 S.Ct. at 688. For one who could not obtain a lawyer, self-representation was the only feasible alternative to asserting no defense at all. *Id.* at 156–57, 120 S.Ct. at 688. Because an indigent parent in a termination proceeding has a statutory right to counsel and is not faced with the choice of self-representation or no defense at all, the historical evidence does not support finding a right of self-representation. *See id.* at 156–59, 120 S.Ct. at 688–90. Regarding the second factor, the Sixth Amendment does not apply in parental rights termination proceedings so its structure cannot provide a basis for find-

ing a constitutional right of self-representation here. Finally, given the inapplicability of the Sixth Amendment, any right to self-representation based on principles of individual autonomy must be grounded in the Due Process Clause. *See id.* at 161, 120 S.Ct. at 690. In analyzing this issue in Martinez, the Supreme Court was not persuaded that the risk of either disloyalty or suspicion of disloyalty is a sufficient concern to conclude that a constitutional right of self-representation is a necessary component of a fair appellate proceeding. Id. at 162, 120 S.Ct. at 691. We likewise find that a right of self-representation is not a necessary component of a fair parental rights termination proceeding. And inasmuch as Section 107.013 effectively implements a due process right, a right to self-representation cannot be statutorily implied.

Hernandez additionally argues that Rule 7 of the Texas Rules of Civil Procedure provides him with a right to self-representation. Rule 7 provides that "[a]ny party to a suit may appear and prosecute or defend his rights therein, either in person or by an attorney of the court." TEX. R.CIV.P. 7. The right to self-representation provided by Rule 7 is not absolute. The Supreme Court has acknowledged that lawful incarceration results in the limitation of the otherwise unqualified right of self-representation given to federal litigations by a federal statute. *Price v. Johnston*, 334 U.S. 266, 285–86, 68 S.Ct. 1049, 1060, 92 L.Ed. 1356 (1948). Texas courts have likewise held that an inmate does not have an absolute right to appear in person in every court proceeding. *See In re Z.L.T.*, 124 S.W.3d at 165. The inmate's right of access to the courts must be weighed against the protection of the correctional system's integrity. Id. For all of these reasons, we overrule Issue One.

## DENIAL OF FAIR TRIAL

In Issue Three, Hernandez asserts that his right to a fair trial before a neutral and unbiased judge was violated because the trial judge had a direct pecuniary interest in the case and exhibited a deep-seated antagonism against him based on political speech Hernandez posted on the Internet.

Hernandez, acting *pro se*, filed a motion to recuse the Honorable Kenneth DeHart, presiding judge of the 394th District Court of Brewster County. Judge DeHart entered an order of recusal and the regional administrative judge assigned the Honorable Peter Peca, Senior District Judge, to preside. During a hearing held on August 5, 2005, Judge Peca stated:

> And the reason I had asked everybody to get together here today is because we have for quite some time scheduled this case for trial on the 29th of this month, with another hearing that was scheduled for the 26th of this month. And I just heard yesterday from the Sixth Region saying that the State is out of money to pay me and we might not be able to try this case at that time. I believe we are over that problem at this point in time.

Judge Peca then discussed the issues relevant to the bench warrant, including the security issues, Hernandez's prior criminal history, the need to shackle Hernandez in the courtroom, and whether Hernandez's presence would be important in judging his demeanor and credibility. Noting that Hernandez's website indicated he believed himself to be a political prisoner, Judge Peca did not anticipate Hernandez's presence as being helpful to "anything with regard to the best interest of the child." Near the conclusion of the brief hearing, the court stated:

> All right. So I think that that's all I need to tell you, that we are still on for trial because I think we are over the funding problems and we are not going to be here on the 26th because we don't have to take up the security issues anymore. And we will get started with the jury selection on Monday morning the 29th.

Hernandez did not attend this hearing in person or telephonically. He did not file a motion to recuse raising these grounds, but he did file a combined motion for new trial and statement of points on which he intended to appeal alleging that the trial court considered extrajudicial materials, i.e., the website, as a ground for refusing to issue a bench warrant. He did not challenge Judge Peca's impartiality, nor did he allege that Judge Peca was biased because of a direct pecuniary interest in the case or an extrajudicial source.

A party intending to appeal a termination order is required to file with the trial court, not later than the 15th day after the date a final order is signed by the trial judge, a statement of the point or points on which the party intends to appeal. Tex.Fam.Code Ann. § 263.405(b)(Vernon Supp.2006). The statement may be combined with a motion for a new trial. Id. The appellate court may not consider any issue that was not specifically presented to the trial court in a timely filed statement of the points on which the party intends to appeal or in a statement combined with a motion for new trial. Tex.Fam.Code Ann. § 263.405(i). Because Hernandez did not set forth the bias issues in his combined motion for new trial and statement, we are precluded from reviewing them on appeal. Issue Three is overruled.

## CHILD'S ATTORNEY AD LITEM

In Issue Four, Hernandez contends that the trial court abused its discretion by denying his motion to disqualify the attorney ad litem appointed to repre-

sent the child. He alleges that the ad litem had a conflict of interest and provided ineffective assistance of counsel because she did not challenge any of the temporary orders. Because Hernandez did not raise these issues in his combined motion for new trial and statement, we will not address them on appeal. TEX.FAM.CODE ANN. § 263.405(i). Issue Four is overruled.

## LEGAL AND FACTUAL SUFFICIENCY

In Issue Five, Hernandez challenges the legal and factual sufficiency of the evidence supporting the order of termination. In his combined motion for new trial and statement of points, he alleged in a single sentence that the evidence was legally and factually insufficient to uphold the jury's verdict and the order of termination, but he did not provide a more specific argument. Under Section 263.405(i), a claim that a judicial decision is contrary to the evidence or that the evidence is factually or legally insufficient is not sufficiently specific to preserve an issue for appeal. TEX.FAM.CODE ANN. § 263.405(i). Since Hernandez's general statement that the evidence is legally and factually insufficient is inadequate to preserve these issues for review, we overrule Issue Five.

## EFFECTIVE ASSISTANCE OF COUNSEL

In Issue Six, Hernandez argues that he was denied the effective assistance of counsel at trial because counsel: (1) expressed her personal dislike of Hernandez; (2) placed the wrong legal burden on the Department as to the Section 161.001(1)(Q)[2] allegation; (3) failed to effectively cross-examine the Department's principal witnesses; and (4) failed to call Patsy Villarreal as a witness on behalf of Hernandez.

Hernandez raised the effective assistance of counsel issue in his combined motion for new trial and statement of issues, but he based it on counsel's personal dislike of him and counsel's failure to raise various challenges to the validity of Hernandez's aggravated assault conviction and sentence. He did not allege that counsel placed the wrong legal burden on the Department as to the "Q" allegation, nor did he raise counsel's failure to cross-examine the Department's witnesses or her failure to call Villarreal as a witness. These issues are not preserved for review. TEX. FAM.CODE ANN. § 263.405(i). Our review is limited to counsel's purported personal dislike of Hernandez.

An indigent parent who is appointed counsel pursuant to Section 107.013(a)(1) has a right to the effective assistance of counsel. *In re M.S.*, 115 S.W.3d 534, 544 (Tex.2003). The proper standard for determining claims of ineffective assistance is the two-step analysis adopted by the United States Supreme Court in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). *In re M.S.*, 115 S.W.3d at 545. Under the first prong, Hernandez must show that counsel's performance was deficient. *In re M.S.*, 115 S.W.3d at 545. We must primarily focus on whether counsel performed in a "reasonably effective" manner. *Id.* Counsel's performance falls below acceptable levels of performance when the representation is so grossly deficient as to render proceedings fundamentally unfair. Id. In this process, we must give great deference to counsel's performance, indulging a strong presumption that counsel's conduct falls within the wide range of reasonable professional assis-

**2.** TEX.FAM.CODE ANN. § 161.001(1)(Q).

tance, including the possibility that counsel's actions are strategic. Id. It is only when the conduct was so outrageous that no competent attorney would have engaged in it, that the challenged conduct will constitute ineffective assistance. Id. Under the second prong, Hernandez must establish that counsel's defective performance caused harm. See id. at 549–50. Harm is established by showing that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. See id. at 550.

Citing Rickman v. Bell, 131 F.3d 1150, 1158 (6th Cir.1997), Hernandez contends that counsel's personal fears and repugnance amounted to a disqualifying conflict of interest that resulted in a denial of effective assistance of counsel. In Rickman, the Sixth Circuit found that counsel's total failure to actively advocate the defendant's cause and his repeated expressions of hostility toward the defendant, amounted to constructive denial of assistance of counsel. Hernandez's reliance on Rickman is misplaced because the record does not reflect that counsel totally failed to advocate Hernandez's cause or that she repeatedly expressed hostility towards Hernandez in front of the jury. We have found only one occasion where counsel expressed concern about Hernandez's appearance in the courtroom. At a pretrial hearing on her motion to withdraw, counsel expressed some reluctance in raising the issue but stated that she would not feel comfortable sitting next to Hernandez in the courtroom unless he were restrained. The trial judge assured counsel that he would discuss courtroom security with the sheriff and advised her not to be concerned. Hernandez, who was attending the hearing by telephone, objected to counsel's statement on the ground that it indicated a conflict of interest. The court overruled that objection and ruled that counsel would continue in her representation.

In his motion for new trial affidavit, Hernandez alleged that counsel "indicated her displeasure with her appointment to the case, and her personal feelings of dislike and repugnancy against me, based on my criminal record and my website, were all clear to me." Even assuming that counsel actually did not like Hernandez as he claims, we are unable to find any evidence in the record that counsel's feelings caused her to performance to be deficient. Counsel did not express any fear of or hostility towards Hernandez in front of the jury and she zealously advocated his cause throughout her representation. Hernandez has failed to rebut the presumption that counsel's conduct falls within the wide range of reasonable professional assistance. It is therefore unnecessary to address the second prong of Strickland. Issue Six is overruled.

## MOTION FOR NEW TRIAL

In Issue Seven, Hernandez argues that the trial court erred by failing to provide him with an evidentiary hearing on his motion for new trial. He contends that he was entitled to an evidentiary hearing on his complaints about judicial bias and ineffective assistance of counsel. But he did not complain about bias in his motion for new trial and was not entitled to an evidentiary hearing on that issue. As for his complaint that counsel rendered ineffective assistance because she disliked him, it did not require an evidentiary hearing. Even if we assume that counsel actually disliked Hernandez as he claims, there is no evidence in the record that counsel's performance was deficient as a result.

▮ We also conclude that Hernandez was not entitled to an evidentiary hearing with respect to his contention that counsel

was ineffective because she failed to collaterally attack his aggravated assault conviction. Hernandez has cited one case in support of his position that he is entitled to collaterally attack his final conviction [3] in the context of the terminating proceeding. *See In re S.J.G.*, 124 S.W.3d 237 (Tex. App.-Fort Worth 2003, pet. denied). There, the defendant pled guilty to sexually assaulting his child and was sentenced to imprisonment for thirty-five years. The State sought to terminate the defendant's parental rights to S.J.G. who was six years old at the time of the termination proceeding. At the hearing, the defendant denied the sexual assault and claimed he was fooled into pleading guilty. He did not remember his voluntary oral confession to the police because he had been drinking at the time. He also testified that he was in the process of filing an application for writ of habeas corpus that could result in the reversal of his conviction. Based on the guilty plea, the confession, and other evidence, the trial court found that termination was appropriate under section 161.001(1)(D), (E), (L), and (Q). On appeal, the father challenged the factual sufficiency of the evidence to sustain the court's finding. The court of appeals found the evidence sufficient to prove that he knowingly placed S.J.G. in conditions or surroundings that endangered her physical and emotional well-being and that he engaged in conduct that endangered S.J.G.'s physical or emotional well-being. *See* TEX. FAM.CODE ANN. § 161.001(1)(D), (E). The court of appeals did not address whether the evidence was sufficient to sustain the other two grounds, nor was it asked to determine (1) the admissibility of the defendant's testimony denying that he committed the offense, or (2) whether a defendant is permitted to collaterally attack a final conviction. We find the case distinguishable. In the absence of any other authority permitting Hernandez to collaterally attack his final conviction, we conclude that Hernandez was not entitled to an evidentiary hearing on this allegation. We overrule Issue Seven. Having overruled each issue for review, we affirm the order of termination.

BARAJAS, C.J. (Ret.), sitting by assignment.

---

3. Hernandez's conviction is final. *See Hernandez v. State*, 24 S.W.3d 846 (Tex.App.-El Paso 2000, pet.ref'd)(affirming conviction on direct appeal); *Hernandez v. Dretke*, 125 Fed. Appx. 528, 2005 WL 361812 (5th Cir., February 16, 2005)(after the United States District Court for the Western District of Texas denied habeas petition challenging state court conviction for aggravated assault of a public servant, Fifth Circuit granted petitioner certificate of appealability (COA) with respect to claim that he was denied due process; Fifth Circuit affirmed conviction, holding that sheriff's allegedly prejudicial testimony concerning petitioner's prior bad acts did not result in denial of due process to petitioner, given strength of prosecution's case), *cert. denied*, 545 U.S. 1143, 125 S.Ct. 2969, 162 L.Ed.2d 894 (2005).