**Opinion issued October 31, 2012**



**In The**

# Court of Appeals

**For The**

# First District of Texas

_____

## NO. 01-11-00439-CV

_____

## IN THE MATTER OF C.L.S.

---

**On Appeal from the 300th District Court**
**Brazoria County, Texas**
**Trial Court Case No. 56309**

---

## O P I N I O N

In this termination of parental rights case, we consider whether the trial court, having permitted a parent to appear pro se at trial, should have first warned the parent of the dangers of self-representation and obtained a valid waiver of the right to counsel on the record. We reverse and remand.

# BACKGROUND

Appellant ["Father"] and appellee ["Mother"] had a child together who was born with a serious heart ailment. Mother and Father, who were not married at the time of the child's birth, filed suit against a drug manufacturer and received a large settlement, the terms of which are confidential. Thereafter, Father filed suit against Mother seeking (1) to establish his paternity and (2) custody of the child. Mother then filed this suit seeking to (1) establish Father's paternity and (2) terminate Father's parental rights. Father was represented in both paternity actions by Faye Gordon.

On November 22, 2010, the trial court issued a scheduling order setting the case for trial on March 8, 2011. The docket sheet shows that Father appeared on that date and was notified that the case on the merits would be set for April 4, 2011.

On April 4, 2011, the parties appeared for trial. Mother was represented by Lloyd Stansbury; the child's ad litem was Mirenda Moorhead; and Father appeared pro se. There is no explanation in the record as to why Father's attorney, Faye Gordon, was not present. The record does not show that Gordon had filed a motion to withdraw. During trial, the following exchange took place during cross-examination:

> Mother's counsel: You had the ability to have a lawyer here today; didn't you.

Father:  Yes, sir, I did.  But he did not show.

Mother's counsel:  Well, you don't have an attorney that you have a contract with yet; do you?

Father: Yes, I do.

Mother's counsel:  Did you bring the contract with you?

Father:  Actually, he has the contract.  But he didn't show up and he has $2,500 of my money.  So, I got on the phone with him and he told me that the case was too short of a distance —

Mother's counsel:  Objection. Nonresponsive, Your Honor.

Trial court:  Sustained.

There is nothing in record to explain whether the discussion was in reference to appellant's attorney, Faye Gordon, or some newly hired attorney who had yet to file an appearance.  Likewise, there is nothing in the record to explain whether appellant asked to represent himself pro se or whether he was required to do so by the trial court when his counsel failed to appear.  There is nothing in the record showing that the trial court admonished Father of the dangers of self-representation or found that Father had waived his right to counsel, either verbally, in writing, or by his actions.

After the parties stipulated to Father's paternity of the child, the issue of terminating his parental rights was tried to the bench, with Father representing himself.  At the conclusion of the trial, the trial court found multiple grounds

3

supporting termination, that termination was in the child's best interest, and terminated Father's parental rights.

On May 5, 2011, the trial court made findings of fact and conclusions of law supporting his oral rendition of April 4, 2011. On May 20, 2011, Jimmy Philips, Jr. filed a Notice of Appearance on behalf of Father. Philips also filed a Notice of Payment of Jury Fee on behalf of Father.

On May 26, 2011, the trial court signed a final judgment terminating Father's parental rights. This appeal followed. In three issues on appeal, Father contends that (1) he did not receive 45-days' notice of the April 4 trial setting as required by Tex. R. Civ. P. 245; and the trial court erred by (2) "proceeding to trial when [Father] was unable to secure the presence of his attorney and it was apparent that [he] did not have the ability to represent himself in the termination proceedings," and (3) "failing to have the court record reflect the reason or reasons that [Father] was proceeding unrepresented by legal counsel in the trial of the termination of his parental rights and if he elected to waive the assistance of legal counsel, that [Father] was aware of the dangers of proceeding without legal counsel." Because we find it outcome determinative, we address Father's third issue first.

# ANALYSIS

In his third issue, Father argues that "the trial court should make the pro se party aware of the dangers of self-representation and the need for adequate attorney representation on the record and to preserve the reasons for lack of representation." In support, Father argues that, "In criminal cases, the United States Supreme Court has declared that if a serious criminal trial proceeds without an attorney for a defendant, due process requires that the court's record must be clear as to the waiver of the use of an attorney, and that the Defendant understands the pitfalls of representation without legal counsel." Father's argument, of course, is a reference to the seminal case on self-representation in criminal cases—*Faretta v. California*, 422 U.S. 806, 807, 818–20, 95 S. Ct. 2525, 2532 (1975).

*Faretta* recognizes that a criminal defendant has the right to the assistance of counsel, as well as the right to waive counsel and represent himself. *See* U.S. CONST. amends. VI & XIV; *see* TEX. CODE CRIM. PROC. ANN. art. 1.05 (Vernon 2005); *Faretta*, 422 U.S. at 807, 818–20, 95 S Ct. at 2532; *Hatten v. State,* 71 S.W.3d 332, 333 (Tex. Crim. App. 2002). It further provides that a defendant should be warned of the dangers and disadvantages accompanying the waiver of the right to counsel and decision to self-represent. *Faretta*, 422 U.S. at 835, 95 S. Ct. at 2541; *Hatten*, 71 S.W.3d at 333. To be constitutionally effective, such a decision must be made competently, voluntarily, knowingly, and intelligently.

5

*Godinez v. Moran*, 509 U.S. 389, 400, 113 S. Ct. 2680, 2687 (1993); *Faretta,* 422 U.S. at 835–36, 95 S. Ct. at 2541; *Collier v. State*, 959 S.W.2d 621, 625 (Tex. Crim. App. 1997). The decision is made voluntarily if it is uncoerced. *Collier*, 959 S.W.2d at 626. The decision is made knowingly and intelligently if made with a "full understanding of the right to counsel, which is being abandoned, as well as the dangers and disadvantages of self-representation." *Id.*

Once a defendant asserts his right to self-representation under *Faretta*, a trial court judge must ascertain that the defendant is choosing to waive the right to counsel knowingly and intelligently, and must warn the defendant about the dangers and disadvantages accompanying such a waiver. *See Faretta,* 422 U.S. at 835; *Williams v. State*, 252 S.W.3d 353, 356 (Tex. Crim. App. 2008). A trial judge must inform the defendant that there are technical rules of evidence and procedure, and that he will not be given any special consideration simply because he has asserted his right of self-representation. *Williams*, 252 S.W.3d at 356. The trial court, however, has no duty to question a defendant about his education, background, or mental history in every case in which a defendant states he wants to proceed pro se. *Id.*

Only one case in Texas has considered *Faretta* in connection with a termination of parental rights case. In the case of *In re A.H.L.*, 214 S.W.3d 45, 49 (Tex. App.—El Paso 2006, pet. denied), the State moved to terminate the parental

6

rights of Hernandez, an inmate, and the trial court appointed an attorney to represent him. *Id.* at 49. Hernandez filed a motion waiving his right to counsel so that he could proceed pro se. *Id.* After a hearing, at which Hernandez appeared via telephone, the trial court denied his motion. *Id.* The case then proceeded to trial, after which Hernandez's parental rights were terminated. *Id.* at 50. On appeal, Hernandez, citing *Faretta*, argued that the trial court erred in denying him his right to self-representation. *Id.* at 51. The El Paso court rejected Hernandez's arguments, noting (1) that the historic reason for *Faretta*—that attorneys were scarce and mistrusted and self-representation was often the only feasible method of defense—was not an issue because an indigent person in a termination has a statutory right to appointed counsel; (2) that the Sixth Amendment, upon which *Faretta* is founded, does not apply in parental termination cases and provides no Constitutional right to self-representation; and (3) due process does not require the right of self-representation in a termination of parental rights case. *Id.* at 52. The court also held that Rule 7 of the Texas Rules of Civil Procedure does not provide an inmate with the absolute right of self-representation. *Id.* *See* TEX. R. CIV. P. 7 ("Any party to a suit may appear and prosecute or defend his rights therein, either in person or by an attorney of the court.").

The present case, however, does not involve the same issue as that presented in *In re A.H.L.* In that case, the court decided the preliminary issue of whether the

7

trial court could deny an inmate in a termination of parental rights case the right to represent himself. In this case, the court *has already granted* Father the right of self-representation. The question we must decide is whether, having allowed Father to proceed pro se, the trial court should also have had the record reflect that Father was made aware of the dangers of self-representation and had voluntarily waived his right to counsel. Though *Faretta* is a criminal case, we look to its reasoning to determine whether such warnings should also be required in parental termination cases before permitting self-representation. In explaining the need for what we now refer to as *Faretta* warnings, the Court provides:

> When an accused manages his own defense, he relinquishes, as a purely factual matter, many of the traditional benefits associated with the right to counsel. For this reason, in order to represent himself, ***the accused must 'knowingly and intelligently' forgo those relinquished benefits***. Although a defendant need not himself have the skill and experience of a lawyer in order competently and intelligently to choose self-representation, he should be made aware of the dangers and disadvantages of self-representation, so that the record will establish that 'he knows what he is doing and his choice is made with eyes open.'

*Faretta*, 422 U.S. at 835, 95 S. Ct. at 2541 (internal citations omitted, emphasis added). *Faretta* warnings are thus required in a criminal case so that a criminal defendant may "knowingly and intelligently" waive his right to counsel.

The United States Supreme Court has held that "the interest of parents in their relationship with their children is sufficiently fundamental to come within the finite class of liberty interests protected by the Fourteenth Amendment." *M.L.B. v.*

8

*S.L.J.*, 519 U.S. 102, 103, 117 S. Ct. 555, 557 (1996). In so holding, the Court stated that "[f]ew consequences of judicial action are so grave as the severance of natural family ties." *Id.* at 103, 117 S. Ct. at 557. For these reasons, the United States Supreme Court places termination of parental rights cases in the same category as criminal cases and analogizes a parent losing parental rights to "a defendant resisting criminal conviction" because both seek "to be spared from the State's devastatingly adverse action." *Id.* at 125, 117 S. Ct. at 568. For the same reason, most jurisdictions also demand a higher standard of proof than the "preponderance of evidence" standard used in most civil cases in proceedings to terminate parental rights. *Id.* 519 at 118 n.11, 117 S. Ct. at 565 n.11.

This Court has held that because the rights involved in a parental termination case are equally important as those involved in a criminal case, and a parent has a statutory right to counsel in termination cases, that right includes the right to effective assistance of counsel. *In re J.M.S.*, 43 S.W.3d 60, 63 (Tex. App.—Houston [1st Dist.] 2001, no pet.). This Court then applied the same standard for determining effective assistance of counsel as that provided in criminal cases applying the Sixth Amendment. *Id.* (citing *Strickland v. Washington*, 466 U.S. 668, 686, 104 S. Ct. 2052, 2064 (1984)).

The Texas Supreme Court has adopted similar reasoning in the case of *In re M.S.*, 115 S.W.3d 534, 544 (Tex. 2003), stating, "we believe that '[i]t would seem

a useless gesture on the one hand to recognize the importance of counsel in termination proceedings, as evidenced by the statutory right to appointed counsel, and, on the other hand, not require that counsel perform effectively.'" (quoting *In re K.L.*, 91 S.W.3d 1, 13 (Tex. App.—Fort Worth 2002, no pet.)). The court then adopted the standard for determining effective assistance of counsel set forth in *Strickland*, a criminal case applying the Sixth Amendment. *Id.* at 545.

Mother, nevertheless, argues that we should not apply *Faretta* because (1) "this was a private, not a government termination," thus there was no state action; and (2) Father is not indigent and not entitled to appointed counsel. Regarding the first argument, the United States Supreme Court has addressed the issue of whether a private termination involves the same Constitutional rights involved in State-initiated terminations, stating as follows:

> Although the termination proceeding in this case was initiated by private parties as a prelude to an adoption petition, rather than by a state agency, the challenged state action remains essentially the same; M.L.B. resists the imposition of an official decree extinguishing, as no power other than the State can, her parent-child relationship.

*M.L.B. v. S.L.J.*, 519 U.S. 102, 117 n.8, 117 S. Ct. 555, 564 n.8 (1996).

Regarding the second issue, *Farretta* protects the right to counsel, not merely the right to appointed counsel. *See Parker v. State*, 545 S.W.2d 151, 155 (Tex. Crim. App. 1977) (assuming that defendant was not indigent and not entitled to appointed counsel, issue remained as to whether defendant voluntarily and

10

knowlingly waived right to counsel); *Bell v. State*, 774 S.W.2d 371, 377 (Tex. App.—Austin 1989, pet. ref'd) (holding that defendant has right to counsel, whether retained or appointed, unless knowingly and intelligently waived). Indeed, at least one other appellate court here in Texas has applied *Faretta* in a termination case even though it did not cite to the case. *See In re J.M.*, 361 S.W.3d 734, 738–39 (Tex. App.—Amarillo 2012, no pet.) ("In consideration of the recognized constitutional dimensions of the parent-child relationship, we see no reason why the trial court should not make an inquiry into whether [appellant] desired to proceed without benefit of counsel.").

Thus, we reject Mother's arguments for why *Faretta* should not be applied to this case and hold that the reasoning behind *J.M.S.* and *M.S.* applies here. Because a termination of parental rights case is like a criminal case—both protect valuable personal rights from "devastatingly adverse action"—we will "apply the same right to counsel standard that we apply to criminal cases." *In re J.M.S.*, 43 S.W.3d at 63 (internal citation omitted). The right to counsel under criminal cases requires that a defendant be made aware of the dangers of self-representation before waiving counsel so that "he knows what he is doing and his choice is made with eyes open." *Faretta*, 422 U.S. at 835, 95 S. Ct. at 2541. Thus, we hold that in parental termination cases, before a parent is permitted to represent himself pro se, the record should show that the trial judge has informed him that there are

11

technical rules of evidence and procedure, and that he will not be granted any special consideration solely because he has asserted his right of self-representation." *Williams,* 252 S.W.3d at 356.[1] This serves to protect the right to counsel in such cases by ensuring that it is not lightly waived.

Our requirement of *Faretta* warnings in parental termination cases is also required in many other jurisdictions. *See, e.g.*, *In re A.G.*, 225 P.3d 816, 819 (Okla. Civ. App. 2009) (holding in parental termination cases that "when the record establishes a defendant was made aware of the dangers and disadvantages of self-representation . . . yet makes the choice to proceed pro se, the defendant cannot thereafter complain that the trial court committed error by permitting him to exercise the right of self-representation); *In re J.D.F.*, 761 N.W.2d 582, 587–88

---

[1]     We do not address the preliminary issue raised in *In re A.H.L.*, 214 S.W.3d at 48, regarding whether a court may limit a parent's right to self-representation. We hold only that once such right has been granted, as was done here, the trial court must comply with the Sixth Amendment protections provided in *Faretta*.

We also express no opinion as to whether appellant waived his right to counsel by appearing without counsel. *See Minjares v. State*, 577 S.W.2d 222, 224 (Tex. Crim. App. 1978) (holding that non-indigent defendant's failure to obtain counsel when provided adequate opportunity to do so constitutes waiver of right to counsel); *Parker v. State*, 545 S.W.2d 151, 156 (Tex. Crim. App. 1977) (when defendant was not indigent but appeared on the date of the revocation hearing without counsel, it could not be concluded that defendant "waived" his right to counsel by using that right "to obstruct the orderly procedure" and fair administration of justice in an effort to postpone the revocation hearing); *Baker v. State*, 519 S.W.2d 648, 649 (Tex. Crim. App. 1975) (when retained counsel failed to appear on day of trial, trial court erred in proceeding to trial in absence of showing of knowing and intelligent waiver of right to representation at trial). We hold only that the record here is silent and insufficient to show such a waiver.

12

(N.D. 2009) (holding that record in parental termination case must show that parent "voluntarily, knowingly, and intelligently relinquished the right to counsel" before proceeding pro se); *In re Amber P.*, 877 A.2d 608, 620 (R.I. 2005) (holding that because "the trial justice fully advised the respondent of the consequences of proceeding pro se, and that [the respondent] acknowledged that he understood those consequences," the court "need go no further to determine that [his] decision was, indeed, the product of a knowing waiver of court-appointed counsel"); *In re Welfare of G.E.*, 65 P.3d 1219, 1224 (Wash. Ct. App. 2003) (holding that waiver termination cases, "similar to the waiver of counsel applicable in criminal proceedings," "must be expressed on the record and knowingly and voluntarily made").

The record in this case does not show that Father was ever warned of the dangers of self-representation. There is, in fact, nothing in the record to show why Father chose to represent himself other than a reference to the fact that his counsel did not show up for trial. Likewise, there is nothing in the record to show that counsel's failure to appear for trial was appellant's fault or whether appellant unjustifiably delayed in obtaining counsel. On this record, we cannot conclude that Father's waiver of the right to counsel was knowingly and intelligently made "with eyes open." Accordingly, we sustain Father's third issue on appeal. In light

of our disposition of issue three, we need not address issues one and two, and decline to do so.

## CONCLUSION

We reverse the judgment of the trial court and remand for further proceedings.

Sherry Radack
Chief Justice

Panel consists of Chief Justice Radack and Justices Higley and Brown.

Justice Brown, dissenting.