**Opinion issued October 31, 2012.**



In The

# Court of Appeals

For The

# First District of Texas

————————————

## NO. 01-11-00439-CV

————————————

## IN RE C.L.S.

———————————————————————

## On Appeal from the 300th District Court
## Brazoria County, Texas
## Trial Court Case No. 56309

———————————————————————

## DISSENTING OPINION

This Court holds that the trial court committed reversible error by failing to admonish a private party of the dangers of waiving his right to counsel before allowing him to appear pro se in this litigation. But the law does not grant the party a right to counsel—only the option of counsel typically available in litigation between two private parties. And the law does not mandate that trial courts advise

private parties on the wisdom of their litigation choices in the absence of a right to counsel.

I agree with the Court that when one parent appears without counsel at a trial in which the other parent seeks to terminate parental rights, the best practice is for a trial judge to explain the benefits of counsel and inquire into whether the pro se parent understands the risks of proceeding without counsel. The parent-child relationship gives rise to rights of constitutional proportions, and such rights are worthy of particular judicial sensitivity. But, while I agree that trial courts are wise to make such inquiries, I disagree that the law requires them to do so.[1] I would hold instead that when neither a Texas statute nor a constitutional provision mandates the appointment of counsel in private litigation between two parents—particularly when the court appoints an attorney to advise the court on the child's best interests—a trial court is not required to ensure a voluntary and knowing waiver of such representation.

## Background

Mother filed this private parental termination proceeding after Father filed a lawsuit seeking custody of their child. At the commencement of the termination proceeding, Mother did not allege abuse upon which criminal charges could be

---

[1] "A wise public policy . . . may require that higher standards be adopted than those minimally tolerable under the Constitution." *Lassiter v. Dep't of Soc. Servs. of Durham Cnty., N. C.*, 452 U.S. 18, 33, 101 S. Ct. 2153, 2163 (1981).

2

based as a ground for termination of Father's parental rights. Instead, her original petition stated two termination grounds, both related to Father's failure to financially support the child: (1) Father voluntarily left the child in Mother's possession without providing the child with adequate support and remained away for a period of at least six months and (2) Father failed to support the child in accordance with Father's ability during a one-year period ending within six months of the filing date of Mother's petition. Father, through counsel, answered Mother's petition and filed a cross-action.

The trial court appointed an amicus attorney to protect the child's best interests and ordered each parent to pay one half of the amicus attorney's costs.

Father first appeared without counsel at a status conference during which the trial court notified him that the case was set for trial. Father also represented himself at trial. He testified that he paid his attorney of record $2500 and signed a contract retaining the attorney for trial, but the attorney did not appear. The record does not indicate why Father's attorney of record did not participate in the trial or contain a request to continue the proceedings in order for Father to obtain counsel. The amicus attorney testified that she explained to Father before the trial that "it was imperative that [he] had an attorney come to court[.]" The amicus attorney asked some questions during trial that were intended to allow Father to present his version of the facts.

Mother testified concerning the child's condition and Father's involvement in the child's life. She testified to the following facts: The child, who was five years old at the time of trial, has a congenital heart defect that requires around-the-clock medical care. Mother knew of the heart defect before the child's birth and received training to care for the child's special needs. Father "refused" the training because he was "very uninterested." Mother and Father lived together in an apartment after the child's birth, but Father spent little time with the child. Two months after the child's birth, the child became cyanotic and was rushed to the hospital. Father did not accompany the child to the hospital. A short time later, the child required cardiac surgery. Father was not present at the hospital for six hours. At six months of age, the child suffered three strokes and seizures, leaving the child permanently brain damaged and incapable of communication or ambulation. Mother explained that the child "can't do anything on his own. He's non-responsive." The child endures seizures daily and requires a special feeding schedule. Mother and Father stopped living together seven months after the child's birth. Mother is the child's full-time caretaker. According to her, Father has provided virtually no care for the child since Mother and Father separated, and Father has never received the training necessary to care for the child. The cost of the child's medical care, however, has been taken care of as a result of a large

4

settlement Mother, Father, and the child received in a lawsuit against the manufacturer of a medication Mother took during her pregnancy.

In the middle of the trial, Mother was granted leave to amend her petition to allege a violation of section 161.001(1)(E) of the Family Code—engaging in conduct which "endangers the physical or emotional well-being of the child." TEX. FAMILY CODE ANN. § 161.001(1)(E) (West Supp. 2012). The trial court entered an order terminating Father's parental rights shortly after the trial concluded. Father retained a new attorney who entered an appearance thirty-four days after the order of termination and who brings this appeal on Father's behalf.

### Procedural Protection of the Right to Counsel Is Mandatory Only When There Is a Right to Counsel

In each of the cases on which the Court relies, the appellant had a statutory or constitutional right to counsel in the action on appeal. When the law grants a right to counsel, certain procedural protections of that right necessarily follow. But there is no statutory or constitutional right to counsel in this case. No procedural protections attach when no right exists. Because there is no right to counsel, the trial court was not required to advise Father of the dangers of waiving such a right.[2]

---

[2] Father was not without remedy. He could have asked the trial court to delay the trial in light of his counsel's failure to appear. The Rules of Civil Procedure expressly grant the trial court discretion to continue a trial on the basis of an attorney's failure to appear. *See* TEX. R. CIV. P. 253 ("Except as provided elsewhere in these rules, absence of counsel will not be good cause for a continuance or postponement of the cause when called for trial, except it be

## A. Father did not have a right to counsel in this proceeding

Both the Texas Legislature and the United States Constitution have endowed certain parties with a right to appointment of legal representation in certain actions involving fundamental rights. But those endowments do not extend to this private litigation between Mother and Father, each of whom had the means to obtain private counsel.

### 1. No Texas statute confers a right to representation in a private termination proceeding

Cognizant of the fundamental importance of the parent-child relationship, the Texas Legislature has provided for legal representation of certain interests in suits affecting the parent-child relationship. But a non-indigent parent in a private dispute is not one of the parties the Legislature endowed with a statutory right to counsel.

The Legislature has provided for legal representation of a child's interest in both private and State-initiated suits affecting the parent-child relationship. *See* TEX. FAMILY CODE ANN. §§ 107.012 (West 2008) (mandatory appointment in

allowed in the discretion of the court, upon cause shown or upon matters within the knowledge or information of the judge to be stated on the record."); *see also In re S.D.A.*, No. 14-09-00487-CV, 2010 WL 2649947, at *4 (Tex. App.—Houston [14th Dist.] July 6, 2010, no pet.) (mem. op.) (holding that trial court abused its discretion by failing to grant continuance in private action to modify parent-child relationship when father's counsel failed to appear). Here, however, the Court holds that the trial court had a non-discretionary duty to advise Father of the dangers of proceeding without counsel even though the Rules dictate that the trial court would have had only a discretionary duty to grant a motion for continuance on that basis.

State-initiated actions), 107.021(a-1) (West 2008) (discretionary appointment in private actions).[3] The Legislature has also recognized a right to counsel for indigent parents in government-initiated suits affecting the parent-child relationship.[4] *See* TEX. FAMILY CODE ANN. § 107.013(a)(1) (West Supp. 2012). ("In a suit filed by a governmental entity in which termination of the parent-child relationship is requested, the court shall appoint an attorney ad litem to represent the interests of . . . an indigent parent of the child who responds in opposition to the termination[.]"). But the Legislature has elected not to create a statutory right to

---

[3] The Family Code requires appointment of an amicus attorney in private termination proceedings "unless the court finds that the interest of the child will be represented by a party to the suit whose interest are not in conflict with the child's interests[.]" TEX. FAMILY CODE ANN. § 107.021(a-1). The Code defines "amicus attorney" to mean "an attorney appointed by the court in a suit, other than a suit filed by a governmental entity, whose role is to provide legal services necessary to assist the court in protecting a child's best interests rather than to provide legal services to the child." TEX. FAMILY CODE ANN. § 107.001(1) (West 2008). The trial court's appointment order closely tracked the amicus attorney duties set forth in the Family Code. *See* TEX. FAMILY CODE ANN. § 107.005 (West 2008). It required the amicus attorney to interview the mother, father, and any persons with "significant knowledge" of the child's condition and history; investigate the facts; review pertinent records; participate in the litigation to the same extent as an attorney representing the child; and finally, "advocate the best interests of the child after reviewing the facts and circumstances of the case."

[4] The Texas Legislature has granted a right to counsel more extensive than that afforded by the due process clause of the United States Constitution. While Texas mandates legal representation of indigent parents in government-initiated parental rights proceedings, the United States Supreme Court has held that federal due process does not require states to provide legal counsel to indigent parents in parental rights proceedings under all circumstances. *See Lassiter*, 452 U.S. at 33, 101 S. Ct. at 2163 (holding that indigent parents were not deprived of procedural due process when trial court failed to appoint them counsel in parental termination lawsuit brought by government).

counsel for a non-indigent parent in a private dispute between the parents. Instead, the Legislature has granted trial courts discretion to appoint counsel for parents in private parental-rights disputes. *See In re D.L.S.*, No. 02-10-00366-CV, 2011 WL 2989830, at *2 (Tex. App.—Fort Worth July 21, 2011, no pet.) (mem. op.) (observing that section 107.021(a) of Family Code provides for discretionary appointments in private termination suits); *see also In re G.J.P.*, 314 S.W.3d 217, 222 (Tex. App.—Texarkana 2010, pet. denied) (same); *In re J.C.*, 250 S.W.3d 486, 489 (Tex. App.—Fort Worth 2008, pet. denied) (same); *In re A.S.L.*, No. 02-09-00452-CV, 2011 WL 2119645, at *2 n.6 (Tex. App.—Fort Worth May 26, 2011, no pet.) (mem. op.) (same).[5] Father did not request that the trial court appoint

---

[5] A trial court may also appoint counsel for an indigent party in a civil case under section 24.016 of the Government Code in exceptional circumstances in which "the public and private interests at stake are such that the administration of justice may best be served by appointing a lawyer to represent an indigent civil litigant." *Coleman v. Lynaugh*, 934 S.W.2d 837, 839 (Tex. App.—Houston [1st Dist.] 1996, no writ) (quoting *Travelers Indem. Co. v. Mayfield*, 923 S.W.2d 590, 594 (Tex.1996)); *see* TEX. GOV'T CODE ANN. § 24.016 (West 2009); *Gibson v. Tolbert*, 102 S.W.3d 710, 712–13 (Tex. 2003) (recognizing that various courts of appeals have stated that trial court has discretion to appoint counsel in civil cases in which exceptional circumstances exist, and assuming that such discretionary authority exists); *Wigfall v. Tex. Dept. of Criminal Justice*, 137 S.W.3d 268, 274 (Tex. App.—Houston [1st Dist.] 2004, no pet.) ("in 'exceptional circumstances,' a trial court could appoint counsel to an indigent civil litigant"). Father does not contend that he was entitled to counsel under this statute.

him counsel and does not argue on appeal that the trial court abused its discretion in failing to appoint him counsel.[6]

Nor can section 107.013's right of counsel be extended to this dispute. The statute's plain language limits its application to suits "filed by a governmental entity"[7] and vests the right it recognizes only in "an indigent parent." TEX. FAMILY

---

[6] Father relies on section 107.021 of the Family Code in claiming a right to receive notice of his right to be warned of the dangers of self-representation.

[7] Indeed, after an earlier version of section 107.013 was interpreted to create a right to the appointment of counsel for indigent parents in private termination proceedings, the Legislature limited the statute's applicability to suits filed by a governmental entity. Family Code section 11.10(d), the statutory predecessor to section 107.013, required the appointment of counsel in a parental termination dispute between indigent parents, as well as the appointment of an ad litem to represent the interest of the child. *See* TEX. FAMILY CODE ANN. § 11.10(d), *repealed by* Act of Apr. 20, 1995, 74th Leg., R.S., ch. 751, § 15, 1995 Tex. Gen. Laws 3893, 3894; *see also Odoms v. Batts*, 791 S.W.2d 677, 679 (Tex. App.—San Antonio 1990, no writ) (holding that trial court, under section 11.10(d), was required to appoint attorney ad litem to represent interest of indigent parent in termination suit sought brought by private individual). The first version of section 107.013(a) recognized a right to counsel for an indigent parent "[i]n a suit in which termination of the parent-child relationship is requested." *See In re T.C.B.*, No. 08-02-00515-CV, 2003 WL 21810958, at *1 (Tex. App.—El Paso Aug. 7, 2003, no pet.) (mem. op.) (observing that "[t]he Family Code guarantees appointment of an attorney ad litem to indigent parents who oppose a petition to terminate their parental rights"). Section 107.013(a) was amended in 2002, however, to limit this right to termination suits brought by a governmental entity. *See* TEX. FAMILY CODE ANN. § 107.013(a). Likewise, section 107.012 of the Family Code, governing the appointment of attorneys ad litem for children, is limited to suits "filed by a governmental entity." TEX. FAMILY CODE ANN. § 107.012 (West 2008). Our task in construing any statutory provision is to give effect to the Legislature's expressed intent. *See Atmos Energy Corp. v. Cities of Allen*, 353 S.W.3d 156, 160 (Tex. 2011). We presume that every word of a statute has been included or excluded for a reason, and that legislative amendments are designed to change existing statutes. *See id.* at 162; *Public Util. Comm'n of Tex. v. Cities of Harlingen*, 311 S.W.3d 610, 620 n.7 (Tex. App.—Austin 2010, no pet.).

CODE ANN. § 107.013(a)(1). This suit was not filed by a governmental entity and Father was not indigent.[8] Consequently, Texas statutes do not confer on Father a right to counsel. *See In re J.C.*, 250 S.W.3d 486, 489 (Tex. App.—Fort Worth 2008, pet. denied) (holding that mother possessed no mandatory statutory right to appointed counsel under section 107.013(a)(1) when her parental rights were terminated pursuant to private termination suit brought by foster parents because "no statutory right exists to appointed counsel in a private termination suit"), *cert. denied sub nom., Rhine v. Deaton*, 130 S. Ct. 1281 (2010).

---

[8] A parent claiming indigence in Texas is required by statute to file an affidavit of indigence. *See* TEX. FAMILY CODE ANN. § 107.013(d). Many of our sister states require an indigency finding and a request by the indigent parent before state-retained counsel will be appointed. *See* Rosalie R. Young, *The Right to Appointed Counsel in Termination of Parental Rights Proceedings*, 14 TOURO. L. REV. 247, 262 (1997). Here, Father conceded that he was financially able to hire a lawyer. He received a large sum of money as part of the settlement of the lawsuit against the drug manufacturer. He owns an entertainment company, and while he did not know his annual earnings at trial, he admitted in cross-examination that it was more than $40,000. On his Facebook page, Father stated that he was "making 6 figures a year" and was "building development with a couple of banks." He bragged that he was the CEO of "a big entertainment company" and controlled "a few off the radar businesses." Father further acknowledged that he could afford to pay child support but stated that he had not done so because Mother would not let him see the child. He also testified that he works on commission for Runway Entertainment and is also employed by Media Access, where he makes "a little under 50 grand." In 2007, Father had a $45,000 return on a $12,000 investment in an entertainment company. In March 2011, he earned $8,200. Father appeared in the courtroom with a diamond Rolex watch. Father owns two luxury vehicles, one of which the record reflects was worth over $250,000.

10

## 2.    Father has not established a right to counsel under the Sixth Amendment

The Court relies heavily on *Faretta v. California*, 422 U.S. 806, 95 S. Ct. 2525 (1975). I agree with the Court that, if Father had a constitutional right to legal representation in this action, he would likewise have the attendant procedural guarantees, including the right to be advised of the dangers of self-representation before waiving the right to counsel. But an informed waiver of the right to counsel is not mandated (though it is advisable) when there is no right to counsel. And there is no constitutional right to counsel here.[9]

The right to counsel upon which *Faretta* is founded is a criminal defendant's right to counsel under the Sixth and Fourteenth Amendments of the United States Constitution.[10] *See id.* at 807, 95 S. Ct. at 2527. But the Sixth Amendment's right to counsel is limited to criminal proceedings. *See* U.S. CONST. amend. VI ("In all criminal prosecutions, the accused shall enjoy the right to . . . have the Assistance of Counsel for his defence."). The Supreme Court has not extended that

---

[9]    Because Father does not rely on any state constitutional provision, my analysis is limited to federal constitution provisions. I note, however, that there is no Texas case extending any state constitutional provision to guarantee the right to counsel in private litigation between parents or to require a trial judge to explain the benefits of counsel and to ensure that a party in a custody dispute voluntarily and knowingly waives the "right" to counsel.

[10]    The Fourteenth Amendment's equal protection clause may be another potential source for the recognition of a constitutional right to the appointment of counsel for indigent parents. Father, however, does not rely on the equal protection clause or cite to any case suggesting that it is the basis for the right claimed by him here.

11

constitutional right to non-criminal proceedings, and Father provides no argument for such an extension here.

### 3. Father has not established a right to counsel under the due process clause of the Fourteenth Amendment

Similarly, while the Supreme Court has held that a right to counsel under the due process clause of the Fourteenth Amendment may extend to state-prosecuted parental termination proceedings under some (but not all) circumstances, *see Lassiter v. Dep't of Social Servs. of Durham Cnty., N. C.*, 452 U.S. 18, 31–32, 101 S. Ct. 2153, 2161–62 (1981), the Supreme Court has not extended that constitutional right to litigation between private parties, and Father provides no argument for such an extension here.[11] *See In re T.L.W.*, No. 12-10-00401-CV, 2012 WL 1142475, at *2–3 (Tex. App.—Tyler Mar. 30, 2012, no pet.) (mem. op.) (holding that warning of dangers of self-representation are not required in termination proceeding because termination proceedings are not criminal).

---

[11] In *Lassiter*, the Supreme Court recognized the important constitutional rights implicated when the state seeks to terminate parental rights, but nevertheless held that a parent who appears without counsel must overcome a presumption that the appointment of counsel is not required in civil cases by demonstrating that an appointment is required under the facts of a particular case under the *Matthews v. Eldridge* balancing test. *See Lassiter*, 452 U.S. at 25–27, 101 S. Ct. at 2159–60 (citing *Matthews v. Eldridge*, 424 U.S. 319, 335, 96 S. Ct. 893, 903 (1976)). That test propounds three elements to be evaluated in deciding what due process requires: the private interests at stake, the state's interest, and the risk that the procedures used will lead to erroneous decisions. *Eldridge*, 424 U.S. at 335, 96 S. Ct. at 903; *see also M.L.B. v. S.L.J.*, 519 U.S. 102, 117, 117 S. Ct. 555, 564 (1996). Father does not argue that the *Eldridge* test applies here nor that he would satisfy the three requirements of that test if it applied.

**B.  Because Father did not have a right to counsel, the trial court was not required to obtain a voluntary and knowing waiver of the nonexistent right**

The Court's decision to reverse the trial court's judgment is predicated on a false premise—a right to receive a warning of the dangers of self-representation based on an implied recognition of a constitutional right to the assistance of state-funded counsel in a private termination proceeding. The Court recognizes "the same right to counsel" as exists in a criminal case. Because such a right exists, according to the Court's holding, a parent now may not be "permitted" to represent himself until the trial court first informs him of the right to representation and then instructs him "that there are there are technical rules of evidence and procedure, and that he will not be given any special consideration simply because he has asserted his right of self-representation." *In re C.L.S.*, — S.W.3d —, — (Tex. App.—Houston [1st Dist.] Oct. 31, 2012, no pet. h.) (quoting *Williams v. State*, 252 S.W.3d 353, 356 (Tex. Crim. App. 2008)).

The Court acknowledges that such notice and warning are intended to ensure that the right to counsel is not lightly waived. *See Faretta*, 422 U.S. at 807, 95 S. Ct. at 2541 (noting that if criminal defendant decides to waive constitutional right to counsel, waiver must be voluntary and intelligent; "although he may conduct his own defense ultimately to his own detriment, his choice must be honored"). The Court relies on the "reasoning behind *J.M.S.* and *M.S.*"—both of which involved a

13

statutory right to assistance of counsel for indigent parties in state-initiated termination proceedings—to hold that a termination proceeding is like a criminal case and that the right to counsel is effective only if a person who appears without counsel does so voluntarily and knowingly. The Court does not cite any Texas or federal case that recognizes the right to counsel in a private termination proceeding as a matter of constitutional law. Only one of the cases cited by the Court from other jurisdictions involves a private termination proceeding, so there is not a discernible majority rule requiring *Faretta* warnings in a private termination proceeding. *See In re J.D.F.*, 761 N.W.2d 582, 587 (N.D. 2009) (relying on state constitution to recognize right to counsel and extending that right to require voluntary and knowing waiver of right); *but see In re PDR*, 713 S.E.2d 60, 61–62 (N.C. Ct. App. 2011), *rev'd*, 723 S.E.2d 335 (N.C. 2012) (termination proceeding initiated by government); *In re A.G.*, 225 P.3d 816, 818 (Okla. Civ. App. 2009) (same); *In re Amber P.*, 877 A.2d 608, 613 (R.I. 2005) (same); *In re Welfare of G.E.*, 65 P.3d 1219, 1222 (Wash Ct. App. 2003) (same).

In the absence of a statutory or due process right to counsel in a private termination proceeding, the Court is requiring trial courts to give legal and strategic advice to a party about the benefits of counsel. That advice may have consequences. For instance, the trial court may feel compelled to grant a continuance to allow a party who is not indigent but comes to court without an

14

attorney time to secure representation, thereby creating an incentive for delay in time-sensitive proceedings. *Cf. J.C.N.F. v. Stone Cnty. Dep't of Human Servs.*, 996 So. 2d 762, 772 (Miss. 2008) (rejecting argument that trial court should have granted continuance to obtain attorney when she had no right to counsel from the state, she did not demonstrate that "she would have been able to secure counsel had she been granted a continuance"). The delay would penalize the parent who hired an attorney and prepared for trial, and may cause further emotional difficulties for the child or prolong custody issues. Additionally, when the two parents have equal economic resources but one has sacrificed to pay for an attorney and the other has not, equity is not served by obligating the state to pay for an attorney for only one side of the dispute. Also, if we recognize a right to counsel, are we opening the door to appellate review of the effectiveness of counsel in private termination cases on direct appeal? Rather than open the door to these potential consequences, I would hold that because there is no due process right to representation in a private termination proceeding, there can be no constitutional requirement that a person voluntarily and knowingly waive that right.

## Conclusion

Because Father has not established that he had any right to counsel, he cannot prevail on his contention that the trial court committed reversible error by

failing to obtain a voluntary and knowing waiver of the right to counsel. I therefore respectfully dissent.

Harvey Brown
Justice

Panel consists of Chief Justice Radack and Justices Higley and Brown.

Justice Brown, dissenting.