

# Fourth Court of Appeals
## San Antonio, Texas

## MEMORANDUM OPINION

No. 04-19-00808-CV

**IN THE INTEREST OF K.E.R.**, K.R.R., Q.A.R., and M.C., Children

From the 37th Judicial District Court, Bexar County, Texas
Trial Court No. 2018-PA-00816
Honorable Charles E. Montemayor, Judge Presiding

Opinion by:     Sandee Bryan Marion, Chief Justice

Sitting:     Sandee Bryan Marion, Chief Justice
Patricia O. Alvarez, Justice
Irene Rios, Justice

Delivered and Filed: April 15, 2020

AFFIRMED

Appellant Robert appeals the trial court's order terminating his parental rights to his four children, K.E.R., K.R.R., Q.A.R., and M.C. In three issues, Robert challenges the sufficiency of the evidence supporting the trial court's best interest and conservatorship findings and argues the trial court denied him due process. We affirm the trial court's termination order.

## Background

In April 2018, the Texas Department of Family and Protective Services ("the Department") removed K.E.R., K.R.R., and Q.A.R. from the home of Robert and his wife Cornelia based on allegations that Robert was sexually abusing a sixteen-year-old child in the home. In July 2018,

the Department removed Robert's and Cornelia's fourth child, M.C., after she tested positive for cocaine at birth.[1]

Cornelia stopped communicating with the Department in March 2019 and did not appear at trial, which took place over the course of two days in October 2019. Robert appeared on the first day of trial via teleconference from prison, where he was awaiting trial on criminal charges related to sexual abuse of a child. On the second day of trial, Robert appeared in person and expressed his intent to represent himself pro se. The trial court advised Robert against doing so but granted the request. The trial court required Robert's court-appointed counsel and guardian ad litem to remain in the courtroom and provide guidance to Robert as needed.

Four witnesses testified at trial: the Department caseworker who worked on the case from April 2018 until December 2018, the Department caseworker who took over the case in December 2018, the Department investigator assigned to investigate the claims involving the three older children, and the Department investigator assigned to investigate the claims involving M.C.

The initial caseworker testified the Department created family service plans for both Robert and Cornelia. At Cornelia's request, the caseworker reviewed Cornelia's service plan with her in Robert's presence. While the caseworker and Cornelia were reviewing her plan, Robert became "upset and very verbally aggressive," so the caseworker asked Robert to leave. In response, Robert attempted to instigate a physical altercation with the caseworker, and Cornelia left the building with Robert without signing her service plan. Cornelia made no efforts to comply with her service plan and did not complete any services except a parenting class.

Robert's service plan required him to submit to a psychological evaluation, attend parenting and domestic violence classes, submit to a drug assessment, drug treatment, and random

---

[1] Robert did not admit paternity of M.C. and, therefore, is her alleged father.

drug testing, and attend individual therapy. Robert submitted to the psychological evaluation and one of six random drug tests, which was positive for cocaine, marijuana, and methamphetamines. Robert did not begin or complete any other services and repeatedly demonstrated "volatility" during the case. Although Robert visited his children, those visits were "extremely chaotic." Robert "just couldn't control his emotions" during visits with the children, for instance "crying and panting on the floor with his children" moments after happily visiting with them.

Robert is required to register as a sex offender for an unspecified offense committed in Nevada before this case began. In June 2019, Robert was incarcerated pending trial on charges related to the sexual abuse allegations that triggered the Department's investigation in this case. The Department investigators testified the minor victim, a sixteen-year-old girl, alleged Robert twice impregnated her and aggressively choked her while she was holding Q.A.R. Cornelia told investigators Robert was the teenager's "pimp" and that she had observed Robert engaging in sex acts with and choking the teenager in the family home.

Cornelia described to Department investigators "a life of constant abuse over years by" Robert. Cornelia claimed Robert had broken bones all over her body and forced her into prostitution. On one occasion when Cornelia refused to prostitute herself to make money for Robert, he beat and strangled her, causing her to give birth to M.C. prematurely. A Department investigator testified that after M.C. was delivered, Robert called Cornelia's hospital room "nonstop," impeding the hospital's ability to care for Cornelia until she was placed in a new room as a confidential patient. Robert disputed Cornelia's allegations, describing Cornelia as a "dope fiend" and claiming he was her "savior."

At the time of trial, the children ranged in age from one to five years old. In September 2019, the three older children were placed in a foster-to-adopt home that is stable and loving. The caseworkers testified the children are doing well and their needs are being met in that home.

Immediately after she was born drug-exposed, M.C. was placed with a different foster family that plans to adopt her. The caseworkers testified M.C. is "doing really well," "thriving," and "very bonded" to her caregivers, who are meeting all of her needs. The caseworkers also testified they believe that because Robert does not understand how his actions endanger his children, returning the children to Robert would endanger them.

At the conclusion of trial, the trial court granted the Department's petition for termination and terminated Robert's and Cornelia's parental rights to all four children. Robert, but not Cornelia, appeals the trial court's termination order.

### Standard of Review

To terminate parental rights, the Department has the burden to prove by clear and convincing evidence: (1) one of the predicate grounds in subsection 161.001(b)(1), and (2) termination is in the best interest of the child. TEX. FAM. CODE ANN. §§ 161.001(b), 161.206(a); *In re A.V.*, 113 S.W.3d 355, 362 (Tex. 2003). We review the legal and factual sufficiency of the evidence using well-established standards of review. TEX. FAM. CODE ANN. §§ 101.007, 161.206(a); *In re H.R.M.*, 209 S.W.3d 105, 108 (Tex. 2006) (per curiam) (factual sufficiency); *In re J.P.B.*, 180 S.W.3d 570, 573 (Tex. 2005) (per curiam) (legal sufficiency).

There is a strong presumption that keeping a child with a parent is in the child's best interest. *In re R.R.*, 209 S.W.3d 112, 116 (Tex. 2006) (per curiam) (citing TEX. FAM. CODE ANN. § 153.131(b)). In determining the best interest of a child, we apply the factors set forth in section 263.307 of the Family Code, as well as the non-exhaustive *Holley* factors. *See* TEX. FAM. CODE ANN. § 263.307(b); *Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976). The *Holley* factors include: (1) the desires of the child; (2) the present and future emotional and physical needs of the child; (3) the present and future physical danger to the child; (4) the parental abilities of the individuals seeking custody; (5) the programs available to assist these individuals to promote the

best interest of the child; (6) the plans held by the individuals seeking custody; (7) the stability of the home of the parent and the individuals seeking custody; (8) the acts or omissions of the parent which may indicate that the existing parent-child relationship is not a proper one; and (9) any excuse for the acts or omissions of the parent. 544 S.W.2d at 371–72. The trial court need not find evidence of each *Holley* factor in order to conclude termination is in the child's best interest. *In re C.H.*, 89 S.W.3d 17, 27 (Tex. 2002). In addition, evidence that a parent has committed one of the acts or omissions listed in subsection 161.001(b)(1) also may be probative of the best interest of the child. *Id.* at 28.

### Best Interest and Conservatorship

In his second issue, Robert argues the evidence is legally and factually insufficient to support the trial court's finding that termination is in the children's best interest. Although the children are too young to express their desires, the evidence presented at trial demonstrates they are thriving in their current placements. While Robert has not demonstrated an ability to provide a safe and stable home for the children, the foster families are meeting the children's needs and plan to adopt them. Before and while this case was pending, Robert demonstrated a pattern of volatility, domestic violence, drug use, and physical and sexual abuse of a child in the presence of his own children. Robert failed to complete his family service plan, failed to take responsibility for the behavior that led to the children's removal, and failed to demonstrate an understanding of how his behavior poses an ongoing threat to his children's safety. Therefore, after considering all of the trial evidence in light of the statutory and *Holley* factors, we conclude there is sufficient evidence in the record supporting the trial court's best interest finding as it pertains to Robert. Robert's second issue is overruled.

In his third issue, Robert argues that because the evidence is insufficient to support the trial court's best interest finding, it is also insufficient to support its conservatorship determination.

Having overruled Robert's second issue, we conclude there is no basis to sustain his third issue. Robert's third issue is overruled.

**Due Process**

In his first issue, Robert argues the trial court violated his due process rights by: (1) failing to hear his petition for writ of habeas corpus, (2) failing to hear his motion to recuse the trial judge, (3) permitting Robert to represent himself pro se, and (4) appointing a guardian ad litem for Robert.

The appellate record contains an undated, un-filestamped copy of Robert's pro se "Petition for Writ of Habeas Corpus and Emergency Motion for Return of Child." The record does not reflect that Robert ever sought a hearing on the petition or that the trial court ruled upon it. While appearing pro se on the second day of trial, Robert moved to admit the petition as a trial exhibit during the Department's case in chief. The trial court instructed Robert he would be permitted to present his case after the Department presented its case, telling him to "wait your turn." When Robert presented his case, however, he did not re-urge his request to admit the petition as an exhibit or otherwise refer to the petition again. Because the record does not demonstrate Robert brought his complaint to the trial court's attention or that the trial court refused to rule upon it, any error is not preserved for our review. *See* Tex. R. App. P. 33.1(a).

On October 15, 2019, between the first and second days of trial, Robert filed a pro se "Motion for Recusal" of the trial judge, alleging the trial judge is related by affinity or consanguinity with an unidentified complaining witness or interested party. In the affidavit supporting the motion to recuse, Robert also alleges the grounds for recusal are that "I am being bullied and made to do as this judge wants of me" and "[t]his judge will not allow me to proceed or represent myself."

"A motion to recuse . . . must not be filed after the tenth day before the date set for trial or other hearing unless, before that day, the movant neither knew nor reasonably should have known:

(i) that the judge whose recusal is sought would preside at the trial or hearing; or (ii) that the ground stated in the motion existed." TEX. R. CIV. P. 18a(b)(1). Robert's motion demonstrates that before he filed the motion to recuse, Robert knew the trial judge would preside at trial and that the alleged grounds for recusal existed. Accordingly, because Robert's motion to recuse does not comply with Rule 18a, he has waived the right to complain on appeal that the trial court did not take action upon the motion. *See Johnson v. Sepulveda*, 178 S.W.3d 117, 118–19 (Tex. App.—Houston [14th Dist.] 2005, no pet.) (citing *Carson v. Serrano*, 96 S.W.3d 697, 698 (Tex. App.—Texarkana 2003, pet. denied); *Gill v. Tex. Dep't of Criminal Justice, Institutional Div.*, 3 S.W.3d 576, 579 (Tex. App.— Houston [1st Dist.] 1999, no pet.)).[2]

Robert also argues that because the trial court appointed him a guardian ad litem, Robert's due process rights were "affected" when the trial court allowed him to represent himself pro se. Robert does not cite any authority suggesting an indigent parent who has been appointed a guardian ad litem may not represent himself at his own insistence. Indeed, an indigent parent may waive the right to counsel in a termination proceeding if the trial court first admonishes him regarding the risks of self-representation or if the parent has standby counsel or hybrid representation. *In re J.G.*, 587 S.W.3d 25, 30–31 (Tex. App.—Tyler 2018, no pet.) (citing *In re CL.S.*, 403 S.W.3d 15, 21 (Tex. App.—Houston [1st Dist.] 2012, pet. denied)). Here, the trial court admonished Robert "this is very legally complicated" and the Department "is seeking to terminate your rights . . . [a] very serious sanction." Robert repeatedly confirmed he understood the trial court's warnings and reiterated his desire to represent himself. The trial court also instructed Robert's fourth court-appointed attorney and guardian ad litem to remain in the courtroom, advising Robert: "You can

---

[2] Regardless of whether Robert's motion was timely, we note mere disagreement with the trial court's rulings does not establish "bias" or "prejudice" warranting recusal. *See Abdygapparova v. State*, 243 S.W.3d 191, 198 (Tex. App.— San Antonio 2007, pet. ref'd) (citing TEX. R. CIV. P. 18b); *accord Sommers v. Concepcion*, 20 S.W.3d 27, 41 (Tex. App.—Houston [14th Dist.] 2000, pet. denied).

have them step up, or seek their advice, or whatever you wish." Therefore, because Robert had standby counsel and was adequately admonished in any event, the trial court did not err in granting Robert's request to represent himself pro se.

Finally, Robert argues the order appointing Robert a guardian ad litem "may itself be improper" because it "severely restricted [Robert's] due process rights, for instance by making him unable to represent himself." Robert does not cite any authority for this argument or identify any other ways in which his due process rights were "severely restricted." As noted above, the trial court did permit Robert to represent himself pro se with court-appointed counsel on standby. Accordingly, we discern no due process violation in the trial court's order appointing Robert a guardian ad litem.

For these reasons, Robert's first issue is overruled.

## Conclusion

Having overruled Robert's three issues on appeal, we affirm the trial court's order of termination.

Sandee Bryan Marion, Chief Justice